[No. G022886. Fourth Dist., Div. Three. May 21, 1998.]

RANDI R., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties
in Interest.

## COUNSEL

Saul Reyes for Petitioner.

Laurence M. Watson, County Counsel, and Amy E. Morgan, Deputy County Counsel, for Real Parties in Interest.

Harold LaFlamme and Craig E. Arthur for Minors.

## OPINION

**SILLS, P. J.**—Randi R. seeks extraordinary relief from Orange County Juvenile Court orders denying reunification services pursuant to Welfare and Institutions Code[1] section 361.5, and scheduling section 366.26 permanency hearings for two of her children, Adrian S. and Christopher C. She claims the court incorrectly applied the provisions of section 361.5, subdivision (b) (10) and (12) to her circumstances. She also asserts insufficient evidence supports the court's conclusion it was not in the minors' best interests to

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise noted.

attempt reunification (§ 361.5, subd. (c)). After reviewing the petition on its merits, we deny relief. (Cal. Rules of Court, rule 39.1B.)

## FACTUAL BACKGROUND

Randi is the mother of four children. Her oldest child, Jackie J., resides with an aunt in Texas. During the early-to-mid-1980's, Jackie was the subject of several child abuse reports concerning physical abuse and neglect. Randi's second child is Dallas R. In October 1990, when Dallas was four years old, he was removed from Randi's custody after he was found crossing a busy intersection by himself. When Randi came to pick him up from the police station, she possessed illegal drugs. Randi was offered reunification services and Dallas was returned to her custody in July 1991 after she had completed substance abuse rehabilitation and parenting education classes.

In April 1994, Dallas and Adrian (born in June 1993) were removed from Randi's custody after informal family maintenance services failed. They were declared dependent children of the Orange County Juvenile Court due to physical and emotional abuse and the risk posed by Randi's substance abuse. In October, Christopher was born addicted to cocaine and he too was made a dependent child and removed from Randi's custody.

The dependency proceedings were transferred to Los Angeles County in January 1995. Shortly thereafter, Randi completed the "Baby-Steps" residential drug treatment program; Adrian and Christopher were returned to her custody; and dependency was terminated in October. Dallas, however, remained in foster care under a permanent plan because of the severe emotional and behavioral problems he had as a result of Randi's abuse and neglect.[2]

In September 1997, Randi called Orangewood Children's Home to see if she could bring the children there because she felt she could no longer care for them. Before anyone from Orange County Social Services Agency (SSA) could pick up the boys, Randi left Adrian and Christopher with a friend. She returned for the boys two days later. According to the friend, Randi had made several attempts in July 1997 to place the two boys for adoption. In

---

[2]After Dallas was removed from Randi's custody in 1994, he engaged in inappropriate sex play with peers, had poor social skills and temper control, and had language delays. He would run in front of cars, play on electric fences and act aggressively with younger children. He described his mother's sexual activity in explicit detail and complained how Randi's "having sex with 10,000 boys" made him crazy.

response to this new incident, SSA applied for noncustody petitions to declare the minors dependent children. The investigation revealed Randi had gained necessary respite from parenting during the two days the boys were out of her custody and she intended to use referrals provided by Los Angeles County. SSA therefore withdrew its application for noncustody petitions.

Only one month later, Randi was arrested after the police found crack cocaine and several crack pipes in her car during a routine traffic stop at 4 a.m. While she was being processed into jail, the police found photographs of her children. When asked where they were, Randi revealed Adrian and Christopher were at home unattended. Officers were sent to the home where the boys were found and taken into protective custody. The current dependency proceedings were initiated as a result of this incident.

On January 27, 1998, the minors were adjudicated dependent children and removed from Randi's custody. The court declined to order reunification services based on Randi's prior failure to reunify with Dallas (§ 361.5, subd. (b)(10)) and her history of failed attempts at substance abuse rehabilitation (§ 361.5, subd. (b)(12)). Randi filed this writ petition challenging the orders denying reunification services.

DISCUSSION

■ Randi contends the juvenile court erroneously applied both subdivision (b)(10) and subdivision (b)(12) of section 361.5 in this case. She argues the Legislature did not intend either provision to apply to her circumstances. She also claims the evidence does not support the court's conclusion pursuant to section 361.5, subdivision (c) it is not in the minors' best interests to pursue reunification. She is incorrect on all points.

While the dependency system is designed primarily to preserve the family whenever possible, the Legislature has recognized ". . . it may be fruitless to provide reunification services under certain circumstances." (*Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 750 [50 Cal.Rptr.2d 858].) Relevant here are the two recently adopted provisions of section 361.5, subdivision (b) which authorize the denial of services based on a parent's previous failures to rehabilitate.

The pertinent portion of section 361.5, subdivision (b)(10) provides: "Reunification services need not be provided to a parent or guardian . . .

when the court finds, by clear and convincing evidence . . . : [¶] . . . [¶] (10) That (A) the court ordered a permanent plan of adoption, guardianship, or long-term foster care for any siblings or half-siblings of the minor because the parent or guardian failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent or guardian . . . ." (§ 361.5, subd. (b)(10).) Randi asserts this provision should not have been applied to her case because a permanent plan was selected for Dallas due to his emotional problems rather than her failure to rehabilitate, as evidenced by the fact Adrian and Christopher were returned to her custody at the same time Dallas was placed in long-term foster care. She concludes the Legislature did not intend to deny reunification services to parents who satisfactorily comply with their reunification plans but to whom the child cannot be returned for other reasons. We cannot, however, construe the statute in the manner urged by Randi.

From the plain language of section 361.5, subdivision (b)(10), the exception Randi wishes to create does not exist. The statute itself makes no reference to why reunification has not occurred; it merely authorizes the denial of reunification services whenever reunification with a sibling has previously failed, resulting in the implementation of a permanent plan. Randi wishes to insert language the Legislature could itself have used, if it had so intended. This we cannot do. Reviewing courts " '[have] no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' [Citations.]" (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

Moreover, Randi's entire premise is questionable. She refuses to accept the connection between the abuse she repeatedly inflicted upon Dallas (and his repeated removals from her custody) and the emotional problems he developed as a consequence. She seems to think her compliance with the terms of her reunification plan is all that was required for reunification to occur. But that position reflects neither reality nor the law. The juvenile court may decline to return a child to parental custody where, although that parent has complied with the reunification plan, the child continues to suffer severe emotional problems as a result of the parent's earlier abuse and where those problems would be exacerbated by return of the child. (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 896-901 [49 Cal.Rptr.2d 900].) Given this, we must conclude that when a parent causes severe emotional damage to her child, the failure to reunify is attributable to the parent's conduct, even where she completes any and all required rehabilitation programs. Thus, contrary to Randi's assertion, the adoption of a permanent plan for Dallas is due to her conduct, not Dallas's continuing emotional problems.

Such a conclusion is not contrary to the Legislature's intent in adopting section 361.5, subdivision (b)(10). As noted during the legislative process which resulted in the enactment of subsection (10),[3] "this provision seems to go to the heart of the ability of the parent to parent safely and appropriately and responds to the often asked question how many children does a parent get to harm before we say, as a matter of law, enough is enough." (Sen. Com. on Judiciary, Rep. on Assem. No. Bill 2679 (1995-1996 Reg. Sess.) as amended May 14, 1996, pp. n-o.) From this statement and the plain language of the statute, we may conclude the Legislature intended to prevent parents from causing additional emotional and/or physical harm to successive children when such harm prevented the return of a previous child, even when the parent has apparently cured her own problems.

For these reasons and because Randi makes no challenge to the sufficiency of the evidence in support of the court's finding, the juvenile court did not abuse its discretion when it found her failure to reunify with Dallas justified the denial of reunification services in Adrian's and Christopher's current dependency proceedings.

Randi also challenges the appropriateness of applying subsection (12) of section 361.5, subdivision (b) to her circumstances. We are not required to determine whether the findings under subsection (12) are correct because we uphold the court's determination that subsection (10) applies in this case. (See *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876 [7 Cal.Rptr.2d 277] [where one basis for jurisdiction supported by substantial evidence court does not need to consider sufficiency of evidence to support other basis or constitutionality of other basis]; *In re Steven A.* (1991) 230 Cal.App.3d 349 [281 Cal.Rptr. 335] [no reversal of judgment terminating parental rights required when one basis for termination is improper if other bases are supported by substantial evidence].) Because this issue is likely to recur, however, we briefly address the merits.

Section 361.5, subdivision (b)(12) permits the juvenile court to decline to order reunification services when it finds, by clear and convincing evidence: "[t]hat the parent or guardian of the minor has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior treatment for this problem during a three-year period immediately prior to the filing of the petition which brought that minor to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in

---

[3]On the court's own motion, we have taken judicial notice of the legislative history of Assembly Bill No. 2679 (1995-1996 Reg. Sess.), which resulted in the enactment of section 361.5, subdivision (b)(10) and (12). (Evid. Code, §§ 452, 459.)

the case plan . . . on at least two prior occasions, even though the programs identified were available and accessible." Randi contends this provision cannot apply to her because she neither refused or failed to comply with substance abuse rehabilitation nor resisted prior treatment. She points to her "successful" completion of two drug rehabilitation programs in support of her position and argues the word "resist" should be narrowly defined to encompass only conduct which constitutes " 'an opposition by direct action or quasi forcible means.' [(Black's Law Dict. (6th ed. 1991) p. 908.)]"

Quite simply, Randi is wrong. There is no question she has "a history of extensive, abusive, and chronic use of drugs [and] alcohol." (§ 361.5, subd. (b)(12).) This is a 38-year-old woman who began drinking at age 9 and using drugs at age 12. Although she previously completed two programs between 1991 and 1995, she relapsed within one year on both occasions. She has made at least four attempts at rehabilitation, each one ultimately failing when she returned to substance abuse. Furthermore, she informed the social worker she believed she needed more than a six-month- to one-year-long program to successfully rehabilitate. Thus, while she has technically completed rehabilitation programs, her failure to maintain any kind of long-term sobriety must be considered resistance to treatment.

Under these circumstances, acceptance of Randi's definition of the term "resist" would narrow the statute to the point of absurdity: A parent could repeatedly go through the motions of rehabilitation just long enough to regain custody of his or her child only to immediately revert to substance abuse and avoid the denial of services. We are convinced the Legislature did not intend to place such a limit on the juvenile court's discretion.

Finally, Randi argues the court abused its discretion when it determined another attempt at reunification was not in the minors' best interests. She claims her immediate reentry into yet another drug abuse rehabilitation program and her history of having custody of Christopher and Adrian demonstrate the court should have provided reunification services to preserve the minors' relationship with her. There is only one response to this contention: "Children should not be required to wait until their parents grow up." (*In re Rikki D.* (1991) 227 Cal.App.3d 1624, 1632 [278 Cal.Rptr. 565].) Randi has had many opportunities to gain control of her life and thereby maintain custody of her children. Christopher's and Adrian's futures should not be sacrificed to give her another chance to try to get and stay sober. The court was well within its discretion when it decided another stab at reunification was contrary to the boys' best interests.

The juvenile court's decision to deny services to Randi is properly authorized by statute and is supported by substantial evidence. Her petition for extraordinary writ is denied.

Wallin, J., and Bedsworth, J., concurred.