[No. D031671. Fourth Dist., Div. One. Nov. 24, 1998.]

SHAWN S. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Timothy A. Chandler, Alternate Public Defender, Jacqueline C. Crowle and Michael Wagner, Deputy Alternate Public Defenders, and Judith Klein for Petitioners.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Patrice Plattner-Grainer, Deputy County Counsel, for Real Party in Interest.

## OPINION

**KREMER, P. J.**—A petition was filed as to Kristy S. soon after her birth in March 1998 due to the drug use of her father, Shawn S., and her mother, Margaret P., such that they were unable to give her proper care. Margaret has six older children of whom four are dependents[1] placed in permanent plans of long-term foster care because she failed to reunify with them. In a second count it was alleged that Shawn had sexually molested two of Kristy's step-siblings and Margaret had failed to protect them.

Margaret has been offered services in the past as to Kristy's siblings but has not utilized them. She has not visited her other children since they were placed in foster care in May 1997. Kristy was born five weeks prematurely and has respiratory problems. Preplacement services were offered to both parents including drug testing, referrals to drug treatment and parenting programs. In addition, Shawn was offered a referral to Safe Paths for sexual abuse counseling. By the time of the disposition hearing, finally held in July 1998, both parents had been involved in drug treatment programs for several months. At the time of the hearing, however, the San Diego County Health and Human Services Agency (the Agency) sought, and the court granted, judicial notice of certain documents from sibling files. These documents showed that on October 24, 1996, Shawn had been ordered not to reside in the home if children were living there. The documents also included orders on amended petitions showing molestation by Shawn and failure to reunify by Margaret. The Agency asked that no services be provided to mother under Welfare and Institutions Code section 361.5, subdivision (b)(10)[2] or to father under section 361.5, subdivision (b)(6). The court so ordered and referred the matter to a section 366.26 hearing.

Each parent seeks review of the court's ruling by separate petition for extraordinary relief as dictated by section 366.26, subdivision (*l*) and California Rules of Court, rule 39.1B. We issued an order to show cause, offered the parties oral argument and now review the issues on the merits. Shawn

---

[1]A fifth was a dependent until her eighteenth birthday. The sixth was assessed for a permanent plan to be heard in April 1998.

[2]All statutory references are to the Welfare and Institutions Code.

argues his conduct did not constitute "severe" sexual abuse under section 361.5, subdivision (b)(6); Margaret argues that her efforts to treat the problems that gave rise to the dependencies should have been considered in denying her reunification under section 361.5, subdivision (b)(10). We grant the petition as to Margaret and deny as to Shawn.

### I.  SHAWN[3]

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .*

### II.  MARGARET

Margaret was denied reunification services under section 361.5, subdivision (b)(10), which states: "[t]hat (A) the court ordered a permanent plan of adoption, guardianship or long-term foster care for any . . . half-siblings of the minor because the parent failed to reunify . . . or (B) the parental rights of a parent . . . over any . . . half-sibling of the minor had been permanently severed, and . . . this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half-sibling . . . ." She suggests that (A) and (B)[4] are to be read together; that is, in order to deny services one must find that the court ordered a permanent plan for a sibling because the parent failed to reunify and that the parent has not made a reasonable effort to treat the problems leading to removal. Margaret believes she has made reasonable progress with her substance abuse problems through four months of participation in a structured drug treatment program.[5] She also believes that the statute itself, the judicial council rule and the legislative intent all dictate that the "reasonable efforts" portion of the statute applies equally to the "A" and "B" sections. We agree.

### DISCUSSION

■    Section 361.5, subdivision (a) requires reunification services for the minor and the minor's parents to facilitate reunification of the family. The

---

[3]Shawn "joins in" the petition filed by Margaret. However, he does not have standing to do so since the issue raised by Margaret, failure to reunify with her other children, does not involve Shawn. Shawn has also made progress in his preplacement services. At the hearing questions of Shawna, daughter of Shawn and Margaret, did arise. It is not in the record what happened at her April 1998 permanency planning hearing.

*See footnote, _ante_, page 1424.

[4]For ease of reference these subdivisions are subsequently referred to as "A" and "B."

[5]She testified that she attends CRASH Monday through Friday from 9:30 a.m. to 1:30 p.m. She drug-tests randomly at least once a week, attends group counseling twice a week, participates in a women's group, attends a life skills program where she is working on her GED (general equivalency diploma), and has been to a few meetings of Adults Molested as Children and Incest Survivors. She has visited Kristy every week.

object is to provide services that will eliminate the problems which caused the child to be removed from the home. In so doing the family will be preserved. However, as set out in *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793] there are certain circumstances under which it appears useless to provide services. Section 361.5, subdivision (b)(10) provides there be no services when the court has ordered a permanent plan because the parents have failed to reunify.

The subdivision of the statute is divided into two parts: "A" and "B." "A" covers those situations, such as Margaret's, in which a permanent plan is in effect for siblings or half-siblings. In that the permanent plan for adoption as well as those for guardianship and long-term foster care are specified, this part of the statute is not limited to permanent plans in which it is contemplated there will be no termination of parental rights. Rather, it covers all circumstances where reunification has failed and a permanent plan is in place. "B" covers those situations where parental rights to siblings and half-siblings have been severed. These children have been adopted and are no longer a part of the birth parents' family. At the conclusion of "B" is the additional requirement that the parent not have made reasonable efforts to "treat the problems that led to removal of the sibling or half-sibling . . . ." Our question is whether this additional condition applies to both "A" and "B" or just to "B."

We first look to the legislative history of this subdivision and find there is none. The legislative intent, as set out in *In re Baby Boy H.,* is to provide no services where a child has been removed from the custody of a parent and it appears useless to do so. When a parent has been offered services and has not been able to reunify with siblings and half-siblings, there comes a point where further services are indeed useless. It is at this time that the goal of family reunification gives way to the assumption that further services are a waste of government monies. (*In re Baby Boy H., supra,* 63 Cal.App.4th 470, 478.) However, when the parent is making reasonable efforts toward rehabilitation, either through preplacement services for the current minor who has just been removed from his parents' custody or through the parents' own efforts, the parent should not be penalized by not receiving any services for the later child. We do not believe the Legislature intended those parents who previously have had siblings or half-siblings of the current dependent child placed in permanent plans to have any less opportunity to reunify with a later child than those whose parental rights as to previous siblings and half-siblings have been severed.

The language of the statute supports this interpretation as well. The requirement that the parents make reasonable efforts to "treat the problems

which led to removal of the sibling" applies equally to parents whose children are under a permanent plan and to those whose parental rights have been terminated. In all instances there has been "removal" of a sibling. Likewise, reasonable efforts to overcome the causes of that removal should apply in all instances.

California Rule of Court, rule 1456(f)(4)(J) likewise reiterates this interpretation when it states:

"(f)(4) Reunification services need not be provided . . . if the court finds, by clear and convincing evidence, any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(J) A sibling or half-sibling of the child:

"(i) has been the subject of a court-ordered permanent plan after having been removed from the custody of the parent . . . of the child before the court for the disposition hearing, or has been declared free from the care and custody of the parent . . . ; and

"(ii) the court finds that the parent . . . has not made a reasonable effort to treat the problems that led to the removal of the sibling or half-sibling from that parent . . . ." Here the rule combines the text of "A" and "B" under subpart (J)(i) and applies the reasonable-efforts condition to all situations where services have been offered and reunification with previous siblings and half-siblings has not occurred.

Although no case law has as yet directly interpreted section 361.5, subdivision (b)(10), the language in *In re Baby Boy H., supra,* 63 Cal.App.4th 470 is consonant with the requirement of reasonable efforts applying to both "A" and "B." In *Baby Boy* the mother gave birth to a child with positive toxicology. She had four other children, two of whom were dependents of the court and two whose parental rights had already been terminated. She was making moderate progress in reunifying with the two dependent children but had recently tested positive, which occasioned the termination of services. She argued she had made reasonable efforts to reunify with the two dependent children, presumably under "A," and should be given reunification services for the baby. However, the trial court had relied on the mother's failure to reunify with the two children to whom her rights had been terminated. The appellate court found clear and convincing evidence that reunification services did not need to be provided and did not further discuss the question of reasonable efforts. (63 Cal.App.4th at pp. 472-475.)

However, the court speaks of the need to assess a parent's current parenting skills in determining whether a child should be declared a dependent. (*Id.* at p. 478.) This is in line with the condition of "reasonable efforts" to improve one's current parenting ability. When a parent who has previously failed at reunification makes an effort to change, the progress made should be considered in determining whether additional reunification services should be provided. In effect, the efforts of the parent rebut the governmental interest in not providing services where they are not effective.

In *In re Joshua M.* (1998) 66 Cal.App.4th 458, 469-471 [78 Cal.Rptr.2d 110] the court wrote that the subdivision must be considered in conjunction with the juvenile statutory scheme as a whole and to "harmonize" with "a parent's historical circumstances." Thus, the theme is that the court must consider the total circumstances of the family, including what is happening at the present time.

The Agency[6] suggests that *Randi R.* v. *Superior Court* (1998) 64 Cal.App.4th 67 [74 Cal.Rptr.2d 770] dictates the disjunctive interpretation of the statute. In *Randi* the mother argued that section 361.5, subdivision (b)(1)(A) should not have been applied because a permanent plan was selected for her son due to his emotional problems rather than due to her failure to rehabilitate. The court explained that such an exception did not exist because the "statute itself makes no reference to why reunification did not occur; it merely authorizes the denial of reunification services whenever reunification with a sibling previously failed, resulting in the implementation of a permanent plan." (64 Cal.App.4th at p. 71.) However, the issue was causation and whether the circumstances allegedly preventing reunification made any difference not whether reasonable efforts applied. Saying the statute authorizes denial of services when previous services have not been effective does not explain the total picture[7] nor is it directed at the possible interrelationship between "A" and "B."

The trial court here, in assessing whether reunification services should be available, did not consider the question of reasonable efforts. The matter must be remanded for a new hearing, at which time the court should include evidence on Margaret's efforts in making its decision on whether to deny reunification services under section 361.5, subdivision (b)(10).

---

[6]Effective November 6, 1997, the "San Diego County Health and Human Services Agency" became the governmental organization handling the cases of dependent children in San Diego County.

[7]If it did, the sentence would read "whenever reunification with a sibling previously failed (and if adopted, had parents who had not engaged in reasonable efforts to treat the problems leading to the sibling's removal) . . . ."

## DISPOSITION

Let a writ of mandate issue directing the Superior Court of the County of San Diego to vacate its order referring this matter to a section 366.26 hearing and to calendar, at its earliest convenience, a contested disposition hearing. As to Shawn, the petition is denied.

Haller, J., and McDonald, J., concurred.