[No. B207752. Second Dist., Div. Three. Jan. 23, 2009.]

In re ALEXIS E. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
PATRICK E., Defendant and Appellant.

## COUNSEL

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**CROSKEY, Acting P. J.**—In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Patrick E., father of three dependent minor children (Father), appeals from a judgment of the juvenile court. He challenges the court's jurisdiction findings that he has a history of substance abuse, and that his current use of medical marijuana places the children at risk of harm.[2] Father also contends that the trial court, in its disposition order, has presented him with an untenable choice of either giving up his legal use of medical marijuana or not reuniting with his children. We find that the record does not support any of Father's contentions, and we will affirm the judgment from which he has appealed.

---

[1] Unless otherwise indicated, all references herein to statutes are to the Welfare and Institutions Code.

[2] Section 300, subdivision (b), states in relevant part that a minor comes within the jurisdiction of the juvenile court if the child has suffered, or there is a substantial risk he or she will suffer, serious physical harm or illness because of the failure or inability of his or her parent to adequately supervise or protect the child, or the inability of the parent to provide regular care for the child due to the parent's substance abuse.

## BACKGROUND

### 1. Detention

The minor children who are the subject of this case are Alexis E. (born Feb. 1997; Alexis), Samantha E. (born Jan. 2000; Samantha) and Elijah E. (born Sept. 2001; Elijah). The children were detained by the Los Angeles County Department of Children and Family Services (the Department) on December 9, 2007, when the Department received a report they were being emotionally abused by Father. After being detained, they were placed with their mother, Cynthia E. (Mother), who lives in the home of the children's maternal grandmother (the Grandmother). Mother and Father had separated five years earlier. It appears that before the children were detained by the Department, they had been living with Father until he was arrested for physically abusing his girlfriend, at which time they went to live with Mother.[3]

The report that the minors were being emotionally abused by Father stems from two physical altercations between Father and his girlfriends, each of which happened in the children's presence. (One incident involved one girlfriend, and the other incident involved another girlfriend.) Father was arrested on July 4, 2007, and on December 8, 2007, on domestic violence charges, and sustained a conviction from the July 2007 charge. He was in jail on the December 2007 charge at the time the Department interviewed Mother and the minors.

Mother told the Department social worker that she also has been the victim of Father's domestic abuse but she never reported it to the police because Father threatened to kill her if she did. Mother indicated she would be filing for a restraining order and to have her marriage to Father dissolved. She stated that because she was physically abused throughout her marriage to Father (they married in 1998), she was diagnosed as being depressed and she was currently being treated for that condition. The Grandmother confirmed Mother's statement that Father has always been physically abusive towards Mother and Mother did not report his abuse because several times he threatened to kill Mother.

The children all appeared healthy and clean when the social worker visited the Grandmother's home. One of the children reported not enjoying visits to Father's home because Father stays in the bedroom all day with his girlfriend,

---

[3] According to Father's written statement, the children lived with him from the time they were born until December 2001, and from November 2006 to December 2007. Apparently they also lived with Mother during that first period of time since, according to Mother, the parents had been separated for five years when this case was filed.

and he smokes cigarettes that smell bad and that he says are his medicine. (They are marijuana cigarettes.) Mother stated Father is a chronic user of marijuana, and she and one of the children stated he uses marijuana in the children's presence. Mother has no criminal record, but Father has the above mentioned conviction for domestic violence.

The detention hearing was held on December 12, 2007, and the minors were detained from Father and released to Mother. An order for individual counseling for the minors was made, with conjoint counseling with Father when appropriate. The court ordered monitored visits for Father at a Department office or with an approved monitor, with neither Mother nor Father's girlfriend to be the monitor. The Department was ordered to provide Mother with family maintenance services, specifically, referrals to parenting classes to address domestic violence and its effects on children. The court also ordered that Father be provided with family reunification services, to include referrals to parenting classes, domestic violence counseling, and drug rehabilitation with random testing. An assessment of Father's girlfriend and her relationship with the minors was ordered, and the court further ordered that if there was no substantial relationship between her and the children, they were not to have contact with her.

Father was released from jail on December 10, 2007, and received notice by certified mail for his arraignment hearing on December 18, 2007, but he did not appear at the hearing. The record shows that father's girlfriend, who has the same address as Father, made a written request that the Los Angeles County Sheriff's Department make no further investigation into the charge of domestic violence against Father. In her request, she stated she no longer wished to proceed with a prosecution of Father because "there was no domestic violence that occurred."

### 2. Adjudication

#### a. The Department's Jurisdiction/Disposition Report

An adjudication hearing was set for February 6, 2008. The Department's jurisdiction/disposition report contains the children's statements regarding how they viewed life with Mother and Father. They all stated Mother did not need to "work on anything" because living with her was good. They described her home as safe, and comfortable, where people are nice, and they love and care.

In contrast, the children provided various negative opinions about living with Father. One child said Father was hardly around, and he and his girlfriend would go out and leave the children (including the girlfriend's children) to make dinners for themselves. Father was also described as needing to practice on being nicer and calmer, and knowing when to use his strength and his yelling voice; as dangerous; as making the children cry and be scared when he yells at them; and as doing things that are "wrong." It was also stated that Father uses corporal punishment by hitting the children on the head and pulling their ears; however, Father denied being physically abusive with the minors.

The children described Father's altercations with his girlfriends as Father being physically assaultive with the girlfriends and they being assaultive with him. Father was on summary probation for his domestic violence conviction and had been ordered to complete a 52-week domestic violence program. The social worker stated her belief that it would be premature to allow the minors to be in Father's care. Father denied that he had been abusive towards Mother and stated it was she who was physically assaultive towards him.

Regarding Father's use of marijuana, all three of the children told the social worker in their own way that drugs are bad for people and that Father smokes. The children had varying opinions regarding whether smoking marijuana affected Father. Alexis stated it did not make Father behave differently, Samantha stated it made Father nicer, and Elijah stated it makes Father feel bad and he slams the door. One of the children told Father he should stop smoking because smoking can kill Father.

Mother opined that the health reasons that Father gives for using marijuana are "just an excuse" so he can smoke marijuana. Father stated he has a prescription for marijuana and he uses it in the morning and at night. He stated he uses about one marijuana cigarette in the morning and one at night. He uses it for pain management because he had surgery on his knee and he uses it for help with his anxiety, and it "helps [him] function normally." He also stated he uses it "so [he] can play with [the children]." Regarding pain management, he stated he became addicted to Vicodin, and other pain pills constipated him. He stated using marijuana has "no impact on [his] ability to function," but he also stated he could not function without it. He stated he uses the marijuana in a different room from where the children are and the room where he smokes it is locked. Contrary to what Mother and one of the

children told the social worker, Father stated he does not use marijuana when the children are in his home. Father also stated that his girlfriend, with whom he lives, has anxiety problems and uses medication and marijuana for her anxiety.

Father told the social worker he sees a psychiatrist and takes an antidepressant. Dr. Jernazian-Kanaian, a diplomate of the American Board of Psychiatry and Neurology, reported to the social worker in January 2008 that Father has been under her care since April 2007 and she sees him every two to four weeks. She stated he suffers from major depression, recurrent and severe panic disorder,[4] and agoraphobia. He is currently on two psychopharmocotherapy drugs, he attends an outside anger management group, and is compliant with his treatment.

On December 19, 2007, Father told the social worker he would not participate in any programs. Also, although Father told the social worker on December 21, 2007, that he would engage in testing, Pacific Toxicology reported he was a "no show" once in December 2007 and twice in January 2008. He stated he and his girlfriend began attending parenting classes on January 16, 2008, through their church. He had a visit with the minors in December 2007 and three visits in January 2008, and was appropriate at all times except once when he attempted to talk to the children about the case.

The Department's report notes there have been four dependency referrals against Mother since August 2004, and at least two of them were made by Father. The first three referrals were made in Santa Barbara County, and they alleged the incapacity of Mother to care for the minors, or severe neglect by Mother. In two of them, the reporting party asserted Mother is mentally ill, suffers from depression, and has been hospitalized. When the first referral was investigated, Mother acknowledged she has mental health problems, stated she had been on medication for a year, and stated she was to begin counseling the following week. She was referred to domestic violence counseling because of Father's emotional abuse of her. In all three of those dependency referrals, the allegations of Mother's incapacity to care for the minors/severe neglect were determined to be unfounded.

In the fourth referral, which was made on December 19, 2007, a week after the Department filed its petition in this case, Father alleged the minors are at risk of physical and emotional abuse by Mother. He stated the minors had

---

[4] As noted below, literature on marijuana states that one of the adverse effects of smoking marijuana is intense anxiety or panic attacks.

been residing with him prior to his recent incarceration and he has "full custody" of them but it was not granted by a court. He stated Mother picked up the minors from his family, he does not know where they are, Mother has threatened to kill them, and she emotionally abuses them. The investigation by the social worker resulted in a conclusion that the allegations were unfounded.

The jurisdiction/disposition report also notes that Father called the police three times in December 2007 and each time the police went to the Grandmother/Mother's home to check on the minors. During a telephone call between Father and the social worker, Father demanded that the children be removed from Mother's care, yelled that the minors were in danger and could be killed at any moment, used profanity, and sounded hysterical. (See fn. 4, *ante*.)

The social worker indicated there was concern about the children being in Mother's care because Mother has been diagnosed with having major depression with psychotic features. She is on three medications, and has been a client of a mental health center since May 2005. Mother was seeing a psychotherapist, Ms. Sharon Watson, on a regular basis, and meeting with a psychiatrist who prescribes the psychotropic medication for her. However, Watson opined that Mother was currently in remission, happy, stable, and compliant with her treatment plan. She stated Mother is a "nice young woman who was missing her children," and part of her depression was not having them. Watson stated Mother has a positive support network in her family and the children "are in a good place." The Department obtained Mother's mental health center records from the Department of Mental Health going back to May 2003. Based on Mother's mental health history, and Father's conduct in the case, the Department recommended that the dependency court order a section 730 evaluation of the family, including a review of Mother's medical records, for the purpose of an appropriate disposition order and case plan.

Mother stated Father was using marijuana in high school, and Father's written medical intake from the physician who recommended that Father use medical marijuana confirms that. That physician, Sean Aldridge, M.D., provided the social worker with Father's medical records from his office. The records state Father was initially seen by Dr. Aldridge on August 24, 2007. The doctor also sent a letter to the Department stating he took Father's medical history and gave Father a physical exam. According to the doctor,

Father reported he had been using marijuana for depression, anxiety, knee pain and back pain, and Father reported the marijuana helpful for all four conditions. The doctor stated that California law permits physicians to recommend marijuana for illnesses for which marijuana provides relief and on that basis, the doctor recommended Father's use of medical cannabis for the treatment of those four medical conditions. The doctor observed that California law permits a physician who is not a patient's primary treating physician to recommend marijuana for the patient's symptoms and the patient need not have failed on all standard medications in order for a physician to recommend or approve use of marijuana.[5]

### b.  *The Initial Adjudication Hearing and the Mediation*

At the February 6, 2008 adjudication hearing, the court ordered the minors to age appropriate therapy. Father was given monitored visitation with them twice a week, minimum of two hours per visit, with the Department having discretion to liberalize. Father requested mediation and it was set for April 16, 2008.

For the mediation, the Department submitted an update of information for the court. The social worker spoke with Mother's therapist, Sharon Watson, on April 10, 2008. The therapist reported seeing "a great difference [in Mother] and she has made great strides. She's happy that she's working and that she's getting things done. If I didn't know she had a mental illness I'd say that she was a young woman . . . [without mental health problems]." (Mother was working at her parents' day care center.) Mother reported to the therapist that things were going smoothly and she was feeling joyful. The therapist noted that Mother has "a lot of support from family." The therapist opined that Mother's having the children with her was good both for Mother and for the children. The therapist denied having any concerns about Mother, saying Mother is in remission and is compliant with medication and her treatment. The therapist related that Mother told her that minor Alexis did not want to visit with Father.

---

[5] The social worker opined there was good reason to question the appropriateness of Father's use of medical marijuana. The Department's report notes that effective September 2005, Dr. Aldridge was placed on a five-year probation with various terms and conditions, including that he is prohibited from prescribing over the Internet and prohibited from supervising physician assistants other than the two physicians assistants employed by him. In a stipulated settlement in a case brought against the doctor by California's Department of Consumer Affairs, the doctor admitted, among other things, that he prescribed dangerous drugs or controlled substances over the Internet over 6,000 times without good faith prior examinations during the period July 1, 2001, through March 3, 2002. However, the appropriateness of Dr. Aldridge's recommendation that Father use medical marijuana is not an issue in this case at this time.

The Department's update on Father was not as positive. On December 21, 2007, the social worker gave Father referrals for the various components of the programs ordered by the court on December 12, 2007, as well as a copy of the December 12, 2007 minute order. Additional referrals were given to him on March 12, 2008. However, by April 15, 2008, he had not enrolled in a drug treatment program, and he had not done any random testing (having added an additional five no shows to his previous three). Also, although he had informed the social worker that he was attending parenting classes through his church and domestic violence classes through his probation, he had not provided the social worker with proof of enrollment or contact information. Father's psychiatrist told the social worker she was aware Father was using marijuana, she did not make a recommendation for its use, and she was not fond of it. However, she denied that his use of marijuana would affect Father's current use of psychotropic medications.

During Father's visits with the minors, Alexis stated she did not want to visit with Father, and she threw tantrums to express her wishes. Alexis stated she would rather remain at home and do her homework. Father's visits are at a Department office. Although Father was visiting on a regular basis, twice he did not arrive within 30 minutes after the scheduled time, and Mother and the children were excused to go home. His excuse was that he was in the parking lot "and no one told [him] anything." However, the social worker observed that Father is not met in the parking lot; rather, he comes into the Department office for his visits. Near the end of March 2008 he told the social worker he would not be able to visit until after 6:00 p.m. during the work week because he was returning to work. The social worker told him the visits could not be monitored by the Department past 5:00 p.m., nor on the weekends. He was also told on four occasions that a family member or a friend could monitor the visits but by the time of the mediation, he had not presented the social worker with such a person.

When told that Alexis did not want to have visits with him, Father became upset, raised his voice, accused Mother of being the reason why Alexis did not want to visit him, accused Mother of being crazy, and threatened that the Department "would be getting a big law suit" if anything happens to the minors. He added that the children are not safe with Mother, accused Mother of not caring for the minors properly, and stated that when the children are returned to him, he will file a law suit.

Regarding Father's use of marijuana, the social worker indicated she had visited three Internet sites that address marijuana, and the sites document that

marijuana is an hallucinogen that affects individuals in different ways, and its effects include intense anxiety or panic attacks, paranoia, altered motivation and cognition, a reduced ability to perform tasks that require concentration or coordination, impaired or short-term memory loss, difficulty keeping track of time, and sleepiness.[6] The social worker opined that Father's use of marijuana means that the children would be in a dangerous environment if they were to be placed in his care for unmonitored visits or to live in his home, and that this danger would be intensified because he has anger management issues. The social worker recommended that he be ordered to complete a drug rehabilitation program and on-demand drug testing. The social worker also recommended that the minors be declared dependent children and placed with Mother under a home-of-parent order.

At the mediation, although the parties came to an agreement, Father's attorney then withdrew the agreement and a contested adjudication hearing was set for May 1, 2008.

### c. The Court's Adjudication Findings and Disposition Order

No testimonial evidence was presented at the adjudication/disposition hearing on May 1, 2008. Father's attorney submitted as evidence a copy of a receipt for $30, which she stated was a "fee receipt for domestic violence." The attorney for the Department observed that on the intake form that Father filled out for the doctor who recommended medical marijuana, Father stated he was not currently on any prescription medications, yet Father's psychiatrist indicated Father was taking prescription medications. The Department's attorney opined that Father obtained the recommendation for medical marijuana use "with fraudulent misstatements." The attorney also observed that although Father's girlfriend did not press charges against him for the December 2007 domestic altercation, the girlfriend is a licensed foster parent and thus may have determined that keeping her license and keeping foster children in her home were more of a concern than pursuing prosecution. The attorneys for the minors, the Department, and for Mother and Father presented arguments on the sustainability of the various allegations against the parents in the section 300 petition.

The court noted Father's anger and control issues, his drug use, and his willingness to be violent to women in front of the minors Alexis and Samantha, and the court remarked that by engaging in such behavior, Father

---

[6] The information from one of the sites used by the social worker states that marijuana's negative affect on the user's driving skills lasts "for at least 4-6 hours after smoking a single marijuana cigarette, long after the 'high' is gone."

was telling his female children that "it's okay to be hit." The court observed that children who are victims of domestic violence or witness it, especially girls, "tend to attract . . . men in their life just like their Fathers who abuse them." The court admonished Father that by abusing Mother and his girl-friends, he was teaching Samantha and Alexis to "accept a man who is controlling and abusive, who treats a woman with this kind of disregard and disrespect." Additionally, the court observed that Father has been prescribed psychotropic medication and those types of medications are provided for mental health issues. Regarding Mother, the court stated she "should have more insight into the reality of the situation [and] she has considerable amount of responsibility for allowing the children to be around the father [in] those circumstances without them being monitored." However, the court also observed that "Mother probably still maintains residual fear of [Father] and his attitude."

Regarding the section 300 petition, the court found the following allega-tions in the petition to be true. On two occasions, in the presence of the minors, Father and his female companions engaged in violent physical altercations resulting in Father being arrested for domestic violence. Father has a conviction for domestic violence and battery. Mother knew of ongoing violence between Father and his companions. Mother and Father have a history of domestic violence, including Father threatening to kill Mother. Mother failed to take action to protect the minors in that Mother allowed Father unlimited access to the children. These matters endanger the children's physical and emotional health and safety and create a detrimental home environment. Father has a history of substance abuse, and on prior occasions he was under the influence of illicit drugs while the children were in his care. Father is a current user of marijuana, such use renders him incapable of providing regular care and supervision of the children, Mother knew of his ongoing substance abuse and failed to take action to protect the minors in that she allowed Father unlimited access to the children, and these matters endanger the children's physical and emotional health and safety and create a detrimental home environment.

Regarding Father's use of marijuana, the court stated the children "have been exposed to a significant amount of trauma and stress" in that they tried to convince Father to stop smoking marijuana because of their concerns for his health. The court further stated that when the minors are at Father's home, he and his girlfriend stay in a bedroom and smoke, the smoke smells funny, and the children's exposure to his smoking has been damaging to them.

The court declared the children dependents of the court, made a home-of-parent order for Mother and the children and ordered family maintenance services for her, and ordered reunification services for Father. For her case plan, Mother was ordered to attend parenting classes and individual counseling to address case issues, and ordered to take her prescribed medication. For his case plan, Father was ordered to undertake drug rehabilitation with random testing, a 52-week domestic violence counseling program, parenting classes through a fatherhood group, individual counseling with conjoint counseling with the minors when appropriate, psychiatric treatment, and he was ordered to take all prescribed medications. Father's visits were to be monitored at a Department office or other neutral setting with Mother not to be the monitor, and were to be not less than twice a week. A review hearing was set for August 18, 2008.

Father filed a timely appeal from the disposition order.

## ISSUES ON APPEAL

Father challenges the sufficiency of the evidence to support the dependency court's finding that it has jurisdiction over the minors because of Father's use of marijuana. He also challenges the court's order that he participate in drug treatment. He contends there is insufficient evidence that he abused drugs in the past, and insufficient evidence that his current medical use of marijuana presents a risk to the minors. He also contends the court's decision undermines the protections afforded by California's sanction of medical marijuana use, because it forces parents to either refrain from using marijuana in a medical context, which can be the most effective substance to treat their medical condition, or give up the possibility of reuniting with their children.

The Department asserts Father's use of marijuana, whether legal or not, places the minors at risk of harm, and therefore the court was correct in ordering Father to participate in drug treatment.

## DISCUSSION

1.  *Standard of Review*

In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order,

resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53 [82 Cal.Rptr.2d 426]; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 [2 Cal.Rptr.2d 429]; *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 598 [207 Cal.Rptr. 728].)

### 2. *Father's Challenge to the Findings of Substance Abuse and Risk*

Father does not challenge the trial court's finding that it has jurisdiction over the minors because of Father's history of domestic violence. He only challenges the findings that he has a history of substance abuse, and that his current use of marijuana presents a risk to the minors.

When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. (*Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72 [74 Cal.Rptr.2d 770]; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875–876 [7 Cal.Rptr.2d 277].)

Here, there is substantial evidence to support the jurisdiction finding that is based on Father's history of domestic violence. Nevertheless, Father contends we should address the trial court's findings respecting his use of marijuana. For Father's benefit we note the following. First, Dr. Aldridge's recommendation that Father use medical marijuana did not come into existence until long after Father began using marijuana, which means that Father was medicating himself with it prior to that recommendation. Thus, Father was using the substance illegally prior to that recommendation, and that fact supports a finding of a history of substance abuse. His prior use of marijuana is no different than if he were using, without a prescription, one of the medications which he was prescribed by his treating psychiatrist.

■ Second, Father uses marijuana when his children are in his home. The children say they smell it. One of the children stated: "My dad sucks drugs; he does them all the time. It looks like daddy's going to set a fire on the

house and it stinks." The trial court could reasonably find that Father's use of marijuana constituted a risk of harm to the minors because of Father's failure to protect the minors from the marijuana smoke. While it is true that the mere use of marijuana by a parent will not support a finding of risk to minors (*In re David M.* (2005) 134 Cal.App.4th 822, 829–830 [36 Cal.Rptr.3d 411]; *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1345–1346 [12 Cal.Rptr.3d 572]), the risk to the minors here is not speculative. There is a risk to the children of the negative effects of secondhand marijuana smoke.

Health and Safety Code section 11362.79 states that nothing in the statutory provisions for the state's voluntary medical marijuana program (Health & Saf. Code, § 11362.5 et seq.) authorizes a person lawfully using medical marijuana to use it "within 1,000 feet of the grounds of a school, recreation center, or youth center, unless the medical use occurs within a residence," or to use it on a school bus, or in a motor vehicle that is being operated. A reasonable inference to be drawn from this prohibition is that use of marijuana near others can have a negative effect on them.

Section 300.2 provides that the purpose of the provisions in the Welfare and Institutions Code relating to dependent children is to provide protection for children being harmed or who are at risk of being harmed. Section 300.2 further states that "[t]he provision of a home environment free from the negative effects of substance *abuse* is a necessary condition for the safety, protection and physical and emotional well-being of the child." (Italics added.) We cannot fathom that the Legislature intended that negative effects on children from marijuana smoke would be unacceptable if it were being smoked outside the medical marijuana law, but acceptable if the person smoking the substance in their home were doing it legally. Or perhaps stated another way, even legal use of marijuana can be abuse if it presents a risk of harm to minors. Thus, in *In re Samkirtana S.* (1990) 222 Cal.App.3d 1475 [272 Cal.Rptr. 489], a mother's abuse of alcohol was considered cause for finding her children were at risk of harm even though use of alcohol is legal.

■ "The paramount purpose underlying dependency proceedings is the protection of the child. [Citations.] '*The parents do not represent a competing interest in this respect.*' [Citation.]" (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214 [272 Cal.Rptr. 316], italics added.)[7] Thus, Father's argument that in addition to marijuana, many prescription and over-the-counter drugs also have negative side effects lends no support to his appellate position; the issue here is not whether his smoking marijuana has negative consequences to him but rather to his children.

---

[7] Mother stated that when she told Father he should not smoke marijuana with the children in the house because it would affect them, Father replied: "I need it."

Moreover, there is evidence that Father's use of marijuana has a negative effect on his demeanor towards the children and others. Mother reported she noticed in February 2007, when she was caring for the children at Father's home, that when Father smokes marijuana, he is irritable, he's not himself, he snaps at the children and has less patience with them, and his response to the children telling Father they are hungry is to tell 10-year-old Alexis to fix something for them. *The children described similar behavior by Father.* They told the social worker that Father needs to practice being nicer and calmer and needs to know when to use his strength and his yelling voice; and they described him as dangerous, and stated he makes them cry and scared when he yells at them. They also observed that he is violent towards his girlfriends, and his girlfriends to him, and he was described as using corporal punishment by hitting the children on the head and pulling their ears. Clearly Father is putting stress on the children. Indeed, the children were delighted by how calm and "nice" it is to live with Mother, and Alexis has grown to not want to visit with Father. Thus, we cannot agree with Father's assertion that when the minors were detained "they were in good condition."

Additionally, the social worker noted in her jurisdiction/disposition report that during a telephone call between Father and the social worker, Father demanded that the children be removed from Mother's care, yelled that the minors were in danger and could be killed at any moment, used profanity, and sounded hysterical. As noted above, his psychiatrist told the social worker that Father suffers from recurrent and severe panic disorder; and the literature on the use of marijuana states that one of the effects of marijuana use is intense anxiety or panic attacks.

■ To summarize, we have no quarrel with Father's assertion that his use of medical marijuana, *without more*, cannot support a jurisdiction finding that such use brings the minors within the jurisdiction of the dependency court, not any more than his use of the medications prescribed for him by his psychiatrist brings the children within the jurisdiction of the court. However, we have just set out the "more" that supports the court's finding that his use of medical marijuana presents a risk of harm to the minors. Moreover, our analysis is not impacted by the fact that Father's psychiatrist monitors his use of drugs. She does not monitor his use of medical marijuana and his behavior at home.

### 3. *The Court's Requirement of Drug Counseling and Testing*

As for Father's assertion that requiring him to engage in drug counseling and testing presents him with having to choose between his legal right to use medical marijuana and his ability to reunite with the minors, we think he overstates the situation. He also again focuses on his right to use medical

marijuana as though it is the paramount issue in the case. It is not. Which prompts us to again note that "[t]he paramount purpose underlying dependency proceedings is the protection of the child. [Citations.] *'The parents do not represent a competing interest in this respect.'* [Citation.]" (*In re Jason L., supra*, 222 Cal.App.3d 1206, 1214, italics added.)

■ At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child. "The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citation.] [¶] The reunification plan ' "must be appropriate for each family and be based on the unique facts relating to that family." ' [Citation.] Section 362, subdivision (c) states in pertinent part: 'The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300.' [Citation.] The department must offer services designed to remedy the problems leading to the loss of custody. [Citation.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006–1007 [57 Cal.Rptr.2d 861].) We think that is what the dependency court did in this case. Having found that Father's use of marijuana presents risks to the minors, the court ordered drug counseling and testing. We will not disturb that decision because we do not find that the court "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." (*Adoption of D. S. C.* (1979) 93 Cal.App.3d 14, 24–25 [155 Cal.Rptr. 406].)

We do not perceive that the marijuana situation is necessarily an either/or one. We do not perceive that Father must necessarily forgo use of medical marijuana. However, the record shows that the manner in which he has been using it represents a threat to the physical and emotional health and safety of the minors. Thus, drug counseling is appropriate. We perceive that he is not the only parent who finds himself in this situation. Moreover, Father's trial court attorney observed that use of medical marijuana can be subject to restrictions for the benefit of the children, and the amount of it that Father uses can be monitored with use of drug testing. Further, there is no indication that Father has recently attempted to manage his pain (which is one of his stated reasons for using medical marijuana), with prescription or over-the-counter medication or a combination of both. As for his statement that he also uses marijuana to relieve his anxiety, perhaps it is his use of marijuana that causes his anxiety, and the "severe panic disorder" ascribed to him by his psychiatrist.

## *DISPOSITION*

The judgment of the dependency court is affirmed.

Kitching, J., and Aldrich, J., concurred.

On February 23, 2009, the opinion was modified to read as printed above.