Filed 12/9/14  In re D.F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re D.F. et al., Persons Coming Under the Juvenile Court Law. | C076345 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.F. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. J06151) |

Leticia F., mother, and Daniel F., father, appeal from orders of the juvenile court at the 12-month review hearing terminating reunification services.  (Welf. & Inst. Code, §§ 366.21, subd. (f); 395 [undesignated statutory references that follow are to the Welfare and Institutions Code].)  Mother contends the court should not have terminated reunification services because she was making good progress in services and could have

1

reunified. Father raises no issues and simply joins the arguments in mother's brief. We affirm the juvenile court's orders.

FACTS

In November 2012, the minors D.F., age 11; Da.F., age 9; J.F., age 4 and A.F., age 2, were detained due to physical and emotional abuse of the older children by father and to mother's failure to protect the minors from ongoing domestic violence. The court sustained the amended petition and ordered the San Joaquin County Human Services Agency (Agency) to provide services for both parents.

By the 12-month review report in December 2013, mother was continuing in counseling and participating in supervised visits. Mother maintained a relationship with father despite the violence and abuse she and the minors had suffered. After 30 sessions of therapy mother was unable to objectively assess the relationship or show she could protect the minors. Father was previously discharged from drug court and at that time said he had no intention of returning. Father blamed the Agency for the minors' removal, denied he had any issues, lacked insight into how his behavior impacted the family and refused services. Father's visits generally went well unless he became angry with something such as a slight delay in starting visits. At one visit, father's angry outburst escalated until the visit supervisor had to explain that the visit could be terminated if he did not calm down. The report recommended termination of services for both parents.

The review hearing commenced in April 2014. Father's counsel had informed the court at a prior hearing that father had had a change of heart and was getting involved in drug counseling. At the review hearing, father presented testimony that he was actively involved in an outpatient program which addressed recovery, relapse prevention, stress management and anger management. The program provided drug testing and father's recent tests were clean. Father was recently reinstated to drug court. He was considered

2

cooperative and showed a change in attitude. Father was expected to complete drug court in 2015.

Father testified he had completed a parenting class and was in substance abuse treatment. Father also testified he currently was in counseling learning about his anger and triggers. He had left a previous therapist because he did not like the treatment modality and believed the therapist was not maintaining confidentiality. He said it took him a long time to engage in services because he was waiting on the results of his first appeal.

Mother's therapist testified mother had attended 36 sessions. Initially, mother was resistant to therapy, in denial of the facts and of her minimization of the minors' abuse. In the last six sessions, around January 2014, mother began to have some insights and there was some evidence of emotional separation and understanding of her codependent relationship with father. Mother was beginning to express her anger. The therapist was cautiously optimistic that more therapy might help mother, it was dependent on mother's motivation. The therapist testified it could take years of therapy for mother to separate from the unhealthy relationship with father. The therapist was concerned whether, given mother's history, she could set boundaries and intervene to protect the minors.

In argument, the Agency pointed out that the 18-month limit for services was a month away and the parents did not meet the criteria for 24 months of services. Minors' counsel added that both parents began making progress only after November 2013, which was the 12-month mark.

The court stated that father waited until late in the game and his testimony still showed reluctance to accept responsibility. The court said it was unable to find father had made significant progress to remedy the problems which led to removal. In addressing mother's status, the court found mother had made an attempt but had gained only limited insight and the therapist was only cautiously optimistic about her further progress. The court found mother's changes were not substantial and father was still

3

blaming others. The court found, by clear and convincing evidence, that return of the minors to the parents would create a substantial risk of detriment to the minors' well-being and further found there was not a substantial probability of returning the minors within the 18-month time limit. The court ordered termination of services for both parents and long-term foster care with a goal of independent living for the minors.

DISCUSSION

Mother asserts the juvenile court should not have terminated her reunification services because she was showing a pattern of progress in her recent therapy sessions.

"[W]henever a child is removed from a parent's . . . custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father." (§ 361.5, subd. (a).) The parents of this sibling group were entitled to, and received, 12 months of services after the disposition hearing. (§ 361.5, subd. (a)(1)(A) & (B).)

Despite the 12-month limitation, "court ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from [the] physical custody of his or her parent or guardian" if the court finds "that there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . within the extended time period . . . ." (§§ 361.5, subd. (a)(3); 366.21, subd. (g).)

The minors were removed in November 2012. The 18-month limit expired in May 2014. In order for the court to extend services at the 12-month review hearing in April 2014, mother and father would have to have shown that they had made so much progress in services that the court could return the minors safely to either parent within a month. Neither parent made such a showing. Father had only recently engaged in services, was new in his substance abuse recovery, was unable to take responsibility for his part in the minors' removal and still had angry outbursts when he felt challenged. Mother's

4

therapist said mother was just beginning to be able to express her anger and understand how the minors were affected by the climate of domestic violence in the home. The therapist was only cautiously optimistic that mother would eventually be able to set boundaries, protect the minors and separate from the unhealthy domestic relationship with father.

The purpose of reunification services is to ameliorate the conditions which led to removal so that the children may be returned home. (*In re Joanna Y*. (1992) 8 Cal.App.4th 433, 438.) Services were offered to the parents to meet this goal. However, neither parent had made enough progress after nearly 18 months of services to show that the minors would be safe if returned home. In any case, with only a month left for services, success by either parent was impossible even if further services were offered in the month remaining that services were available to them. The court properly concluded there was not a substantial probability of return within the time remaining and that termination of services was required. There was no basis to extend the reunification period. "Children should not be required to wait until their parents grow up." (*In re Rikki D*. (1991) 227 Cal.App.3d 1624, 1632; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 73; see also *In re Debra M*. (1987) 189 Cal.App.3d 1032, 1038.)

DISPOSITION

The orders of the juvenile court are affirmed.


          HULL          , Acting P. J.

We concur:


    MAURO      , J.


    DUARTE    , J.

5