Filed 2/24/14  In re R.L. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.L., et al. ,<br>Persons Coming Under<br>the Juvenile Court Law. | H040056<br>(Santa Clara County<br>Super. Ct. Nos. JD21981; JD21982;<br>JD21983) |
| SANTA CLARA COUNTY<br>DEPARTMENT OF FAMILY AND<br>CHILDREN'S SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>T.B.,<br><br>      Defendant and Appellant. | |

On appeal from the dispositions in dependency cases commenced on behalf of three boys R.L., J.L., and G.L., (the children), their mother T.B. raises an insufficiency of the evidence claim with respect to the juvenile court's assumption of jurisdiction under Welfare and Institutions Code section 300, subdivision (c) (serious emotional damage),[1] and she challenges its dispositional orders of removal under section 361, subdivision (c)(1).  (See § 395, subd. (a)(1).)

---

[1]     All further statutory references are to Welfare and Institutions Code.

1

We find no reversible error and affirm.

## I.

### *Procedural History*

Second amended dependency petitions were filed on behalf of the children under section 300, subdivisions (b) and (c).

After the submission of the petition for decision based on the Jurisdiction/Disposition Report, the juvenile court amended a number of the allegations of the second amended petitions and found the allegations as amended were true. The factual allegations found true by the court with respect to jurisdiction under section 300, subdivision (b), were as follows.

On July 17, 2013, the children (G.L., seven years old; J.L., 14 years old; R.L., 15 years old) were placed in protective custody pursuant to a protective custody warrant because they were "at significant risk of immediate harm in their parents' care due to frequent exposure to domestic violence and their mother's increasingly violent threat."

On July 3, 2013, mother attacked father with a razor and a kitchen knife and threatened to kill father and burn down the house. Father suffered minor injuries. J.L. was "present and witnessed the mother's attacks and threats" and R.L. was also present in the home. Responding police found the family's home "in disarray, with overturned furniture and items scattered all over the floors." Mother was arrested for felony assault with a deadly weapon.

Parents have repeatedly exposed the children to "intimate partner violence." In June 2013, mother grabbed a gun and threatened to kill father and herself. Mother "routinely assaults the father with weapons and has threatened to kill father and to kill the entire family." Mother has "kicked holes in the walls, broken doors, and thrown and smashed objects in the home." "Both parents have failed to recognize the physical and emotional risk to the children, and neither has taken steps to protect the children from physical or emotional harm."

2

"[T]he children are suffering from emotional damage due to their exposure to repeated violence in the family's home. [R.L.] locks himself in his room when the parents fight. [G.L.] leaves the family home and goes to the paternal grandmother's home when the parents fight. [J.L.] has repeatedly seen and heard his mother assault the father and threaten to harm the entire family. He describes his mother as 'crazy' and 'psycho'[;] both he and [G.L.] do not feel safe around the mother."

Mother has a substance abuse history, which includes using marijuana and alcohol and "occasional methamphetamine use." "The children report that the mother smokes marijuana in their presence and drinks alcohol on a daily basis." Her "substance abuse impedes her ability to safely parent her children."

Father also has a substance abuse history, which includes using marijuana and alcohol and "experimenting with methamphetamines." Father has a medical marijuana card. "The children report that the father smokes marijuana in their presence and drinks alcohol on a regular basis. The father's substance abuse impedes his ability to safely parent [the] children." In addition, father has a criminal history that includes two misdemeanor convictions of disorderly conduct, one involving soliciting a lewd act and the other involving prostitution.

The court found that the children were also described by subdivision (c) of section 300. As to its assumption of jurisdiction under subdivision (c) of section 300, the court stated: "I do think this is a 300(c) case. The level of conflict here is so extreme—and the behavior that we see from the children right now is not—I would not consider it serious emotional damage, but I do think they're at risk of that given what they have witnessed with this level of conflict in the home."

In its disposition, the juvenile court declared each of the children to be a dependent child of the court. It found that there was clear and convincing evidence that their welfare required their removal and ordered their removal from parental custody. It adopted the finding that "[t]here is or would be substantial danger to the physical health,

3

safety, protection, or physical or emotional well-being of [each] minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the child from the parent's/guardian's physical custody." The court explained that "[t]he family conflict, the relationship between the parents that often rose to the level of violence, certainly creates a substantial risk of danger to their physical health, safety, protection, and physical and emotional well-being."

The court ordered family reunifications services for both parents.

II

*Discussion*

A. *Sufficiency of the Evidence to Support Jurisdiction*

Mother asserts that the juvenile court erred in sustaining the petition under section 300, subdivision (c), because the evidence was insufficient to show the children had suffered, or were at risk of suffering, severe emotional harm. Under section 300, subdivision (c), a child is within the jurisdiction of the juvenile court where "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care."

Section 300 provides that "[a]ny child who comes within any of the following descriptions [subdivisions (a) to (j)] is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court." "Section 300 contemplates that jurisdiction may be based on any single subdivision." (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 330.) Mother does not challenge the sufficiency of the evidence supporting the court's assumption of jurisdiction under subdivision (b) of section 300. Accordingly, she is not asserting that the court improperly assumed dependency jurisdiction.

4

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.  (*Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72 . . . ; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876 . . . .)"  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate.  [Citations.]"  (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Courts may exercise their "discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.*, *supra*, at p. 454 . . . ); (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 . . . ; see also, *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494 . . . ); or (3) 'could have other consequences for [the appellant], beyond jurisdiction' (*In re I.A.*, *supra*, at p. 1493 . . . [not reaching the merits of an appeal where an alleged father 'has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings'].)"  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)  In this case, mother urges us to reach her insufficiency of the evidence claim with respect the juvenile court's assumption of jurisdiction under section 300, subdivision (c), because the court predicated its removal orders on the substantial risk to the children's emotional well-being.

Mother is not suggesting that the juvenile court's allegedly improper determination of jurisdiction under section 300, subdivision (c) (that the children were "at substantial risk of suffering serious emotional damage" "evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others") entails any prejudice

other than the removal orders.  She has not demonstrated that the juvenile court's determination that the children were at risk of "serious emotional damage" was essential to its removal orders.

In assuming jurisdiction under section 300, subdivision (b), the court found true that "the children are suffering from emotional damage due to their exposure to repeated violence in the family's home."  This finding is not challenged on appeal, nor could it be since it is supported by substantial evidence.  At disposition, the court specified that it was basing its removal orders on the family conflict and parental relationship "that often rose to the level of violence."  It concluded that those circumstances created a substantial risk of danger to the children's "physical health, safety, protection, and physical and emotional well-being."  Mother's contention that the juvenile court might not have removed the children from parental custody at disposition if it had not made the allegedly improper jurisdictional determination is unfounded speculation.  The record contains no suggestion whatsoever that the court would have not ordered removal had it not determined this was a section 300, subdivision (c), case as well as a section 300, subdivision (b), case.  Further, as explained more fully below, the court's removal orders were clearly supported by the evidence.

We find it unnecessary to evaluate the sufficiency of the evidence to support an assumption of jurisdiction under section 300, subdivision (c).

B.  *Sufficiency of the Evidence to Support Removal Order*

A juvenile court's removal of a child from parental custody requires a finding, by clear and convincing evidence, of at least one circumstance described in subdivision (c) of section 361, including: "There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."  (§ 361, subd. (c)(1).)  California Rules of Court, rule

6

5.695(d)(1) provides for removal where clear and convincing evidence shows there is "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child, or will be if the child is returned home, and there is no reasonable alternative means to protect that child."

"Our review on appeal [of an order of removal] follows the ordinary rules for substantial evidence, notwithstanding that the finding below had to be made by clear and convincing evidence. [Citations.]" (*In re H.E.* (2008) 169 Cal.App.4th 710, 723-724.) " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]" (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750.)

"On a challenge to an order removing a dependent child from his or her parent, we are limited to whether the order is supported by substantial evidence. We view the record in the light most favorable to the order and decide if the evidence is reasonable, credible and of solid value. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53 . . . .)" (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1078.) "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court . . . ." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

Citing *In re James T.* (1987) 190 Cal.App.3d 58, 65 (*James T.*), mother argues that a child can be removed from a parent's custody only in extreme cases of parental abuse or neglect and this is not such a case. She asserts that the problems were between the parents and there was no evidence that mother had physically harmed the children.

Citing *In re Basilio T.* (1992) 4 Cal.App.4th 155 (*Basilio T.*), mother contends that the evidence of domestic violence was insufficient to support the removal order. In *Basilio T.*, the court found that two incidents of domestic violence that did not result in physical harm to the children, who were then four and six years old, were an inadequate basis to substantiate a finding of "substantial danger to the physical health of the minor"

7

under section 361, former subdivision (b)(1).  (*Id*. at pp. 160, 170-171.)  It explained: "While these incidents presumably occurred in or near the minors' presence, it is significant that neither incident directly affected either minor physically, i.e., the adults were fighting with each other and not directing their anger at the minors or abusing them. In fact, no evidence whatsoever was presented that the minors were harmed physically during the incidents that led to this proceeding."  (*Id*. at p. 171.)

Both *James T.* and *Basilio T.* predate the 1996 statutory amendment of former section 361, subdivision (b)(1) (now section 361, subdivision (c)(1)).  That amendment expanded the basis for removal from only "substantial danger to the physical health of the minor" (Stats.1992, ch. 382, § 2; p. 1471) to "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor" (see Stats.1996, ch. 1139, § 8.5, pp. 8145-8146).  The removal statute presently permits removal on broader grounds than "substantial danger to physical health."  (See *In re H.E., supra,* 169 Cal.App.4th  at pp. 719-722.)

Furthermore, while the children have not been physically injured in the past, the evidence showed that there was physical conflict between the parents and mother had repeatedly engaged in acts and threats of violence.  She had threatened to kill everyone in the family, to kill J.L. and his cats, and to burn down the house.  In two separate instances, J.L. had hidden the gun in the home when mother was threatening to kill.  The Jurisdiction/Disposition Report indicates that parents had been exposing their children to domestic violence for an extended period of time and neither parent had taken any steps to protect the children from exposure to violence in the home.  The social worker had stated that the children were "in need of therapy to address their emotional issues caused by the domestic violence in the home."

The report indicated that the children were interviewed on July 18, 2013.  The children reported that they often leave the family home and go to the grandmother's home during their parents' arguments.

8

G.L. reported to the social worker that he gets scared when his mother yells at him and feels safer with his grandmother. He reported that his mother had thrown a toaster. He said "mother 'throws stuff, makes holes in the walls, broke a door and cut dad with a razor blade.' " He said he had been living with his grandmother for several months and he wanted to stay with her. The grandmother reported to the social worker that G.L. had been living with her since January 2013 because he did not feel safe in the home. G.L. was adamant that he did not want to live with either parent. He also stated that his parents smoke pot and they were alcoholics.

J.L. reported to the social worker that "mother 'drinks a lot every morning' " and "smokes methamphetamines 'white stuff' and smokes marijuana 'in front of us.' " J.L. witnessed an incident in the family home in mid-June 2013 during which mother reportedly grabbed a gun and threatened to kill father and herself. Father grabbed the gun from mother and handed it to J.L., who then hid it in the house. J.L. and father later said the gun was not loaded; J.L. had "the bullets 'hidden in a lockbox.' "

J.L. had also witnessed an incident on July 3, 2013. He told the social worker that his parents argued and mother threatened to kill father. Mother had used a razor to cut father's chest. Mother threatened to kill J.L. and his cats with a butcher knife. J.L. reported that mother had been drinking prior to the incident and she "drinks a lot of alcohol." J.L. "hid his guns and went to his grandmother's house." J.L. is afraid of his mother and does not feel safe with her. J.L. became emotional when he discussed mother's threat to kill him and his cats with the social worker. He described his mother as "not sane," "crazy," and "psycho" and he stated that she needed to be in jail.

R.L. reported that, during his parent's arguments, "his mother throws 'random things and hits dad' " and "his parents 'cuss at each other.' " He locks himself in his room or goes to his grandmother's home.

A police report attached to the Jurisdiction/Disposition Report indicates that police were dispatched to the children's home on July 3, 2013 regarding a possible stabbing.

9

Responding officers found the residence in disarray; the living room couches were overturned and property was spread all over the floor.

A police report indicated that J.L. related that he had witnessed his mother attack his father with a disposable razor and a large kitchen knife and smash everything in the residence. He said mother was screaming that she was going to kill father and burn down the house. The paternal grandmother, who apparently lives in a house located behind the family home, reported to police that she heard mother scream, "I'm going to kill you! I'm going to kill everyone and burn the house down! Get these fucking kids out of here!" Mother made a statement to police that father and she had been arguing; she became angry and threw a glass of water against the wall. According to her, father became more angry and started pushing her and, at one point, grabbed her by the neck and held her to the ground. The police found a Ruger 10/22 rifle, three magazines, "250+ rounds of CCI .22 cal hollow point ammunition" in the house.

The paternal grandmother reported to the social worker that on January 1, 2013, the children ran to her home to report that their parents were arguing. Mother had broken a bathroom door and smashed a shower door. Mother had cuts on her arm and father had glass in his feet. She indicated that, at some other time, mother had put holes in walls. She said the children often came to her house to escape their parents' arguing. On July 3, 2013, the grandmother had gone to the children's home while the parents were arguing; she had taken the children to her house, and called the police. J.L. was crying because he thought mother was going to kill his cats.

The Jurisdiction/Disposition Report indicated that J.L. did not pass any of his eighth grade classes and had a G.P.A. of 1.3. R.L., a high school junior, had received some failing grades the prior year and he had a G.P.A. of 1.17. J.L. reported to the social worker that, due to the issues at home, he did not do well in school the previous year.

During an interview on July 18, 2013, mother admitted to drinking alcohol almost daily, smoking marijuana occasionally, and using Vicodin. She had most recently

10

smoked marijuana a few days before the interview. She admitted to previously smoking methamphetamine, most recently a couple of months before the interview. In drug testing on August 1, 2013 and August 8, 2013, mother tested positive for marijuana and other substances. Father reportedly smokes marijuana and drinks alcohol on a regular basis. During an interview on July 24, 2013, father had admitted to trying methamphetamine a year earlier. "The children believe that their parents need help to treat their substance abuse problems."

In addressing the topic of the children's safety in the home in the Jurisdiction/Disposition Report, the social worker expressed concerns for the children's emotional and physical wellbeing. Although mother was cooperating with drug testing and attending 12-step meetings, she had not started treatment for substance abuse or anger management. Father had been "generally uncooperative" and he had not participated in his case plan. None of the children wished to return to their mother's care because they feared her erratic behavior and did not trust her.

Domestic violence places children, even if not the intended victims, in harm's way. (See *In re Heather A., supra,* 52 Cal.App.4th at p. 194.) "[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*Ibid.*) Both G.L. and J.L. expressed feeling unsafe in the home and fearing mother. Although R.L. had claimed that "he refuses to get depressed," both J.L. and he were suffering from very poor academic performance. It was the social worker's opinion that domestic violence in the home had resulted in emotional issues for the children that required therapy.

Mother nevertheless insists that there were less drastic alternatives to removal. She suggests that the children could have remained in her custody on condition she engage "in intensive and appropriate conjoint counseling and therapy, as well as parenting and family preservation services." There was no evidence that a court order

requiring mother to participate in those services would be sufficient to protect the children and keep them safe from physical and emotional harm, at least in the near term. This is not a case where, by the time of disposition, parents had already made significant strides in addressing the problem leading to dependency jurisdiction. (Cf. *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 285-286, 288-289 [parents were remorseful about their use of corporal punishment, each had completed a parenting course, and they were working with a private therapist to improve parenting skills and, in the therapist's opinion, "it was totally safe to return the child"].)

Mother also seems to suggest that the Department could have relied upon the paternal grandmother, who lived directly behind the family's home, to monitor the situation if the children remained in their home. Although the grandmother apparently lived in close proximity to the children's home and had provided them a refuge from the repeated domestic violence at home, the domestic violence still recurred.

Even though the children had not been physically injured in the past, the juvenile court could reasonably infer from the evidence that the continuing domestic violence and threats of violence in the home posed an ongoing substantial danger to the children's "physical health, safety, protection" and their physical and emotional well-being if they were returned home and there were no reasonable means by which they could be protected without removing them from parental custody. (§ 361, subd. (c)(1); see *In re T.V.* (2013) 217 Cal.App.4th 126, 136-137; *In re Heather A.*, *supra*, 52 Cal.App.4th at pp. 194-196.) Substantial evidence supports the court's removal orders.

DISPOSITION

The judgments are affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

13