Filed 6/2/14  In re Bryana G. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRYANA G., a Person Coming Under the Juvenile Court Law. | B252489 (Los Angeles County Super. Ct. No. DK00754) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALEJANDRO G., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Philip Soto, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Alejandro G. (Father) challenges a juvenile court order establishing dependency jurisdiction over his daughter Bryana G. under Welfare and Institutions Code section 300, subdivision (b).[1]  Jurisdiction was established from the conduct of the child's mother, who pleaded no contest to the petition and has not appealed.  Bryana is a dependent if the actions of either parent bring her within the scope of section 300.  Father also contests the disposition placing the infant outside of his custody.  The court has authority to direct the parents to participate in services before returning the child to their custody.

## FACTS

Bryana was detained from Daysy A. (Mother) by the Department of Children and Family Services (DCFS) in September 2013, after Mother tested positive for amphetamines on the day that Bryana was born.[2]  Mother also tested positive while pregnant.  She said that she used drugs due to depression and did not realize she was pregnant for the first seven months of gestation.  Mother claimed to have stopped using drugs after learning of her pregnancy, and blamed her positive tests during pregnancy on "diet pills"; she was informed that diet pills cannot provoke positive results for amphetamines.  Bryana was hospitalized for apnea and eating problems.  When Father visited Bryana at the hospital, he smelled strongly of alcohol.

During his initial encounter with a DCFS social worker, Father calmly denied that he uses drugs or alcohol, but acknowledged a history of using methamphetamine (meth); he also denied awareness of whether Mother uses drugs.  When the social worker spoke to Mother and Father in the hospital, they suddenly became aggressive, and were yelling

---

[1]     The statute states that a child may be declared a dependent of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ."

[2]     DCFS also detained Bryana's half siblings Valerie V. (age 2), Cesar V. (age 5), and Anthony V. (age 7).  These three children are not part of Father's appeal because he is not related to them.

2

and screaming. Father threatened to sue the social worker. Two days later, while the social worker was investigating Mother's residence, Father arrived and began yelling and using inappropriate language. Mother also began yelling, but calmed down as soon as she realized that the social worker had a removal order.

DCFS categorized the family as being at "high" risk for future abuse, due to Mother's ongoing drug abuse; Father's admitted history of meth use; Mother's failure to obtain prenatal care; and Father's criminal history. His record includes arrests and convictions for possessing and selling drugs.

DCFS filed a petition on behalf of Mother's four children. It alleged that Mother physically abused Cesar V. by striking him with a belt, causing him serious physical harm and placing the other children at risk of harm; Mother has a history of substance abuse, including meth, and tested positive for the drug during pregnancy and at Bryana's birth, which places the children at risk of harm; and Father has a history of substance abuse that includes meth. At a hearing on September 5, 2013, Mother and Father denied the allegations. The court found a prima facie case for detaining the children, and found Father to be the presumed father of Bryana. DCFS was ordered to provide reunification services, including parenting, substance abuse counseling and weekly random drug testing. The parents were given monitored visitation.

In an interview for the jurisdiction report, Mother denied hitting the children with a belt. She first began using meth in the ninth or tenth grade, but stopped in 2005, when pregnant with Anthony. She resumed meth use in 2012, when the father of her three older children—who introduced her to drugs—died in an accident. She did not realize that she was pregnant with Bryana for five or six months, and claims to have stopped using meth when she learned of her pregnancy—apart from taking the drug one day before Bryana was born, resulting in a dirty test at the hospital. Mother admitted that her actions were "dumb" and is willing to complete classes to regain custody of her children. Mother knows that Father has a criminal history for selling drugs, but during their two years together, she has never seen him drink or use drugs. Mother asserted that Father

was unaware that she used drugs while pregnant with Bryana, because Mother took the drugs while visiting friends.

Father denied awareness that Mother used meth: he first learned of it when she tested positive at the hospital. During the time they have lived together, he never saw her use drugs. Father formerly drank a lot, but said he has not consumed alcohol since 2005, after seeing a video of his bad behavior while intoxicated. Father believes that the nurse at the hospital smelled hand sanitizer he used, not an alcoholic beverage. Father began using cocaine at age 15, then started using meth. He was in and out of jail five or six times. While out of jail, he used meth "every weekend then I would use it every day." In 1997, Father collapsed from an overdose and had to be revived with CPR. He completed several drug programs in jail, one at age 17 and a second program in 2004-2005. He has not used drugs since 2005, because he wanted to start a family and stay out of jail. Since the children were detained, Father has enrolled in a program and is testing clean.

The hospital nurse denied smelling hand sanitizer, which she uses daily. Rather, she smelled alcohol coming from Father, who was asleep in Mother's hospital room. The paternal grandmother and uncle, among other relatives, stated that Father used to drink but never consumes alcohol now, not even a beer at a party, and they know nothing about Mother's substance abuse. Monitored visits were going well and the parents were attentive and caring toward Bryana.

On October 15, 2013, Mother pleaded no contest to the petition. The court accepted the plea and sustained an allegation that Mother has an unresolved history of substance abuse, including meth, that periodically impairs her ability to care for her children; Mother tested positive for amphetamines on April 4 and August 28, 2013, during her pregnancy and while giving birth to Bryana. Her substance abuse places the children at risk of harm.

Father testified that he resided with Mother during her pregnancy and never suspected that she was using drugs. He has been around drug users and is aware of the symptoms they display. If he believed Mother was using drugs, he would have reported it because he knows that drug use during pregnancy can damage the child. Father is

4

unaware of Mother's history of drug abuse, as she never disclosed it. He never saw drug paraphernalia in their home.

Father agreed that he has a history of using meth, cocaine, and marijuana. He had a drug-related arrest in 2011, but was not charged with any crime. Despite his familiarity with drug abuse, Father had no idea that Mother was using drugs while they lived together. Father was aware of Mother's pregnancy "from the beginning" and saw no indication that Mother was using drugs. Father did not disclose his history of drug abuse to Mother and never asked about her history. Under questioning by the court, Father stated that people who use meth do not eat or sleep, but Mother always ate and slept every night, so she displayed no symptoms of drug abuse.

Father's counsel argued that no evidence supported a finding that Father failed to act in the face of a known danger. The court told Father that he had "an attitude of deliberate indifference. You better than anybody else in the room know what symptoms are exhibited by people under drugs. . . . You better than anybody else should have been watching this lady to make sure that she wasn't using drugs," even if Mother was "probably getting very good at hiding it from you." In short, the court believed that Father was "not acting to protect your child from a mother who was a drug addict."

The court sustained an allegation that Father has a history of substance abuse including meth, and "knew or reasonably should have known the Mother was a current abuser of drugs, which placed the child at risk of harm." The court placed Bryana outside of parental custody because there are no other reasonable means to keep her safe. Father received monitored visits and was required to take 10 on-demand drug tests. If any tests are missed or positive, Father must participate in a drug program. He was ordered to enroll in parenting and Narc-anon.

## DISCUSSION

### 1. Appeal and Review

Father appeals from the disposition. (Welf. & Inst. Code, § 395; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.) We review jurisdictional findings and the disposition to see if any substantial evidence, contradicted or uncontradicted, supports them. (*In re*

*Heather A.* (1996) 52 Cal.App.4th 183, 193.) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

## 2. **Juvenile Court Jurisdiction**

Father contends that the jurisdictional findings against him are not supported by substantial evidence. Findings were made against Father after jurisdiction was asserted over Bryana based on Mother's no-contest plea. There is no challenge to the court's jurisdiction based on Mother's conduct. "[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.)

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor *if any one of the statutory bases* for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773, italics added; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) If there is any basis for asserting jurisdiction, no reversal of the judgment occurs, even if other bases are improper, because the purpose of the dependency proceeding is to protect the child. (*In re Alysha S.*, *supra*, 51 Cal.App.4th at p. 397; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72.)

"Father asks us to review the evidentiary support only for the juvenile court's jurisdictional findings involving *his* conduct. Because he does not challenge the jurisdictional findings involving Mother's [conduct], however, any decision we might render on the allegations involving Father will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over

6

the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

Father argues that there is no evidence that he currently abuses drugs or alcohol: despite his history of addiction, he denies using any substances since 2005. The juvenile court did not make a finding that Father abuses drugs or alcohol; in fact, it rejected the allegation that Father smelled of alcohol while visiting Mother and Bryana in the hospital. The court instead found that Father knew or reasonably should have known that Mother was abusing meth during her pregnancy.

Father admitted to knowing the symptoms displayed by meth users, though he disclaimed that Mother had the symptoms. The court believed that Father was familiar with the behavior of meth users, having used the drug himself on a daily basis and even overdosing on it. Nevertheless, the court disbelieved Father's claim that Mother showed no signs of drug abuse. Father knew "from the beginning" about Mother's pregnancy, even while Mother claimed ignorance of her condition for the first six or seven months of gestation. Mother conceded that she began using meth in 2012, and tested positive for meth in April 2013, four months before Bryana was born. Mother and Father lived together the entire time that Mother was using meth. The court could reasonably disbelieve Father's claimed unawareness that Mother was high during this period.

The court was not required to credit Father's testimony that he was oblivious to Mother's weekly drug use over the course of a year, given evidence of Father's extensive experience with meth and his daily interactions with Mother in the family home. There is no requirement that DCFS produce scientific studies showing that Father, as a drug user since the age 15, is an expert in the behavior of drug addicts. Father conceded during trial that he is personally familiar with the behavior of drug addicts. The court's finding that Father knew or reasonably should have known of Mother's meth use is supported by substantial evidence.

7

### 3. Disposition

Father contends that the court should have delivered Bryana into his custody. At the time of disposition, Father was living with his mother, Maria A. Maria A. has a 1994 felony conviction for selling drugs and cares for a mentally disabled adult daughter, whose life would be disrupted if a baby came to live in the home. While Father voiced a willingness to move, he had not done so. Moreover, Father works as a mechanic and it was not clear who would take care of an infant for him since neither Maria A. nor Mother were allowed to do so.

Under the circumstances, the court stated that "I cannot release the child to the Father if he's going to be living with someone that has a drug history that has not been cleared up." It added, however, that DCFS "is to work with the Father, [ ] to try and find an appropriate living arrangement for him and the child. That's got to include child care and all other services that are needed." Finally, the court observed that it would allow "a change of placement order as soon as an appropriate home is found with [Father] so long as he's complying with the case plan."

The court's order was reasonable and measured. The court acknowledged that Father needed to find a home for himself and Bryana, obtain child care for her, and complete 10 random drug tests. Once this was accomplished, Father could ask the court to place Bryana with him. If motivated, Father could complete the court's requirements in short order, because he had tested clean four times and had only six tests left.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:

CHAVEZ, J.                              FERNS, J.*

_____
\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.