Filed 6/11/14  In re Isaiah S. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ISAIAH S., a Person Coming Under the Juvenile Court Law. | B252569 (Los Angeles County Super. Ct. No. CK64103) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KEVIN S., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Tracey Dodds, Deputy County Counsel for Plaintiff and Respondent.

Appellant Kevin S. ("Father") appeals the jurisdiction and disposition orders of the juvenile court concerning his son Isaiah S. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

Father is the father of Isaiah S. and A.S.[1] The children's mother ("Mother"), who is not a party to this appeal, has battled drug addiction for years. Five previous dependency petitions had been filed regarding the children.

In September 2013, the Los Angeles County Department of Children and Family Services ("the Department") received a referral alleging that Mother was under the influence of an unknown substance while caring for Isaiah. The social worker interviewed Mother on September 5, 2013, at which time Mother denied using drugs, but disclosed that she was receiving treatment for mental health issues. Mother informed the social worker that Father was indeed Isaiah's father, but that he was not involved in the child's life, nor did she have contact information for him.

The social worker offered Mother services and attempted to work with her. However, on two occasions Mother tried to falsify a urine drug test. She told the coordinator of the drug treatment program that that she did so because her urine would have tested positive for PCP. The second time this occurred, Mother became angry and belligerent and refused to leave the drug treatment facility, until the director threatened to call the police.

On September 20, 2013, the Department held a Team Decision Making meeting ("TDM"). Mother attended, and the social worker notes that she had slurred speech, dilated pupils, glossy eyes, and was confused as to time and dates. She said she had been awake all night because of anxiety, and had just awakened prior to attending the TDM. During a short break in the meeting, Mother became so agitated that it was necessary to call the police. The Department detained Isaiah.

---

[1] A.S. is not a party to these proceedings.

2

On September 24, 2013, the social worker received a telephone call from Father, who resided in Victorville. He was aware that Mother was once again using drugs. He wanted Isaiah released to his care or to one of his relatives. He said he was attending school and working part time. He told the social worker that he would drug test, but could not do so until the following Monday.

On September 25, 2013, the Department filed a Welfare and Institutions Code[2] section 300 petition, alleging that Isaiah needed the protection of the juvenile court due to mother's neglect. Father appeared at the arraignment and detention hearing, but Mother failed to do so. The juvenile court found a prima facie case that Isaiah was a person described by section 300, and further found that substantial danger existed to his physical or emotional health and that there were no means to protect him without removing him from Mother's care. The Court ordered Isaiah released to Father, but stayed the order pending a pre-release investigation of Father.

On October 2, 2013, the Department submitted its investigation report of Father. The social worker reported visiting Father in his two bedroom, two bath apartment, which she found satisfactory. Father admitted to having a criminal history, and having served time in prison for possession for sale of drugs. He also admitted to a conviction of driving under the influence of alcohol or drugs and for a violation of Penal Code Section 273a, subdivision (a), willful harm or injury to a child. After his release from prison in 2010, Father became employed at Victor Valley College and obtained his associate of science degree; he continues taking classes in business administration. He is no longer on probation or parole. The Department did not recommend Isaiah's release to Father because it had not received his criminal history or drug test results. In a subsequent second report, the Department learned that Father had numerous convictions for substance abuse and other drug related crimes, as well as a Penal Code section 273a, subdivision (a) conviction. On October 2, 2013, the juvenile court reversed its previous interim order releasing Isaiah to Father.

---

[2]     Unless otherwise indicated, further statutory references are to this code.

3

On November 6, 2013, the Department filed a combined jurisdiction/disposition report and an amended section 300 petition, which added two allegations concerning Father's use of illicit drugs (count b-3) and criminal history (count b-4). Father stated that his criminal history was in his past and that he had stayed out of trouble since he was released from prison in 2010. He said that he is working hard to be a positive role model for his children.

The matter was adjudicated on November 13, 2013. Father did not appear at the hearing since he was attending school in Victorville. The Department moved into evidence the reports it had previously filed with the court. Father's counsel argued that count b-3 of the petition against him should be stricken. Counsel for Isaiah agreed with this contention.

The juvenile court ruled that there was insufficient evidence as to Father's history of substance abuse being a present problem, and dismissed the b-3 allegation. However, based on the Penal Code section 273a, subdivision (a) conviction, the court sustained the b-4 allegation and found that this history placed Isaiah at risk of future harm due to the nature of the conviction. The court also sustained the allegations concerning Mother's drug use and mental health problems. Isaiah was thus declared a dependent of the court. Father was granted unmonitored visits; the juvenile court gave the Department discretion to further liberalize those visits. Father was ordered to attend a parenting program. Based on the dismissal of the b-3 allegation, the court denied the Department's request that Father complete a drug/alcohol program and submit to random drug tests.

Father timely filed his Notice of Appeal on November 13, 2013.

DISCUSSION

1. *Jurisdictional Finding*

The juvenile court found true the following allegation of the petition: "The child Isaiah [S.]'s father, Kevin [S.] has a criminal conviction for child cruelty in 2008. The father's criminal history endangers the child's health and safety and places the child at

4

risk of physical harm, damage and danger." Father challenges this jurisdictional finding on appeal.

In addition to the foregoing count, the juvenile court sustained allegations based on Mother's neglect of Isaiah due to her drug abuse and mental and emotional problems. Mother has not appealed those findings. Consequently, regardless of the merits of Father's contentions, Isaiah will continue to be a person described by section 300. Thus, this court need not consider Father's challenge to the court's jurisdictional findings.

In the case of *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491, the Court of Appeal stated: "[I]t is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300 . . . , the child comes within the court's jurisdictions, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the action of either parent brings [the minor] within one of the statutory definitions of a dependent."' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found supported by the evidence. (E.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [addressing remaining findings only '[f]or [f]ather's benefit']; *In re Joshua G.* [(2005)] 129 Cal.App.4th [189,] 202 [when a jurisdictional allegation involving one parent is found supported, it is 'irrelevant' whether remaining allegations are supported]; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 330 [declining to address remaining allegations after one allegation found supported]; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72 [same].)" (*In re I.A., supra,* 201 Cal.App.4th at pp. 1491-1492.)

When "issues raised in [an] appeal present no genuine challenge to the court's assumption of dependency jurisdiction . . . any order we enter will have no practical impact on the pending dependency proceeding, thereby precluding a grant of effective relief. For that reason, we find [such an] appeal to be nonjusticiable." (*In re I.A., supra,* 201 Cal.App.4th at p. 1491.) The many aspects of the justiciability doctrine in California were summarized in *Wilson v. Los Angeles County Civil Service Commission* (1952) 112 Cal.App.2d 450, wherein the court stated: "'A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition. [A]s a general rule it is not within the function of this court to act upon or decide a moot question or speculative, theoretical or abstract question or proposition, or a purely academic question, or to give an advisory opinion on such a question or proposition.'" (*Id.* at pp.452-453, quoting 1 Corpus Juris Secundum, p. 1012, Actions, section 17a.) An important requirement for justiciability is the availability of "effective" relief – that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status: "It is this court's duty to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. [Citations.]" (*In re I.A., supra,* 201 Cal.App.4th at p. 1490.)

Thus, because the outcome of Father's appeal on the issue of jurisdiction will not affect Isaiah's dependency status, this issue raised by Father is nonjusticiable.


2. *Dispositional Order*

Father, the non-custodial parent, requested legal and physical custody of Isaiah; accordingly, the court proceeded under section 361.2, which provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court

6

shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." If it refuses to make such placement to a non-custodial parent, the juvenile court must find by clear and convincing evidence, that it would be detrimental to the child to give custody to the noncustodial parent. (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569.)

On review of a juvenile court order denying custody to a non-custodial parent pursuant to section 361.2, the appellate court employs the substantial evidence test, bearing in mind the aforesaid heightened clear-and-convincing burden of proof. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654; *In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1326; *In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038.) In applying this standard, the reviewing court views the evidence in the light most favorable to the juvenile court's findings, which requires resolving all conflicts in the evidence in the light most favorable to the juvenile court's findings. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) A removal order is proper if it is based upon proof of parental inability to provide proper care for the child, as well as proof of potential detriment to the child if the non-custodial parent is given custody of the minor child. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136.)

At the jurisdiction/disposition hearing, after reviewing the reports submitted by the parties and after hearing argument from counsel, the court stated: "The court does feel that as to b-3 that there has been insufficient evidence that the father's history of substance abuse and those convictions listed in b-3 – that those would place the child at risk. . . . And as to b-4, the court does see that as a different issue than b-3 because the criminal conviction is for child cruelty, and the court does believe that that criminal history does place . . . – that there is a risk to the child because of the nature of the conviction. . . . The court does have concerns that, because of the very nature of the conviction, that it speaks to the risk in this case. . . ."

Based on its findings, the juvenile court ordered that there would be a substantial danger if the child was returned to Mother or if custody was granted to Father. The court ordered reunification services for Father in accordance with the case plan. In doing so, it

stated: "Court finds by clear and convincing evidence that there is a substantial danger if the child were to be returned to the parents and that there are no reasonable means by which the child's physical welfare can be protected without removing him from the parents. The Court orders the child removed from the parents. Reasonable efforts were made to prevent and eliminate the need for the child's removal. The care, custody, and control of the child will be placed with the Department of Children and Family Services for placement."

After making its jurisdiction and dispositional orders, the court, while dealing with the proposed case plan, struck the drug and alcohol program for random drug testing of Father, since it had found that insufficient evidence had been provided that Father's previous drug history put the child at risk, and over the objection of the Department granted Father unmonitored visitations with the minor, giving the Department the right to further liberalize visitation.

Father contends that the juvenile court's jurisdictional and dispositional orders are inconsistent with its own findings and that there is no substantial evidence to support a finding under section 361.2, subdivision (a) that ". . . placement with [the noncustodial] parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

Penal Code section 273a, subdivision (a) reads as follows: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon, unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not to exceed one year, or in the state prison for two, four, or six years."

The appellate record indicates that a criminal complaint was filed on or about April 4, 2008 in the North District (Lancaster) of the Los Angeles Superior Court. The complaint contained five counts, to wit: (1) possession of a controlled substance; (2)

8

being under the influence of a controlled substance; (3) child cruelty with possible injury or death; (4) driving a motor vehicle while under the influence of alcohol or drugs; and (5) violation of Penal Code Section 273a, subdivision (a). Father entered a plea to count 5 in exchange for which the other four counts were dismissed. Imposition of sentence was suspended and Father was placed on four years of probation and 365 days in the county jail.

Father contends that the Penal Code section 273a, subdivision (a) conviction was not a "child cruelty" case, just "drunk driving" with a minor in the vehicle. In other words, Father was guilty of driving a motor vehicle while under the influence of drugs and with his child present in the vehicle. There is, however, nothing in the record on appeal to substantiate this claim. All that appears from the record is that Father, pursuant to a plea bargain, pled guilty to a violation of Penal Code section 273a, subdivision (a), and the other charges against him were dismissed. Although Father's alleged scenario leading to his plea agreement, as set forth in his opening brief, is certainly possible, there is nothing in the record to substantiate his claim.

Father compares his situation to that of the parents in *In re J.N., supra,* 181 Cal.App.4th 1010, a case in which a family of five was involved in a car accident following the excessive drinking of alcoholic beverages by the parents. (*Id*. at p. 1016.) The Court of Appeal there noted that although the seriousness of the parents' endangering conduct could not be understated, "there was no evidence from which to infer there is substantial risk such behavior will recur." (*Id*. p. 1026.) Father's transgression was not, however, a one-time incident. Father has a substantial criminal history involving drug-related offenses and driving under the influence. Indeed, after the incident in question, he was sentenced to state prison for possession for sale of PCP. The actions which led to his Penal Code Section 273a, subdivision (a) conviction were not an isolated incident, and this case is thus not analogous to the factual circumstances of *In re J.N., supra,* 181 Cal.App.4th 1010.

In sum, there was substantial evidence to support the juvenile court's findings under section 361.2. Father was convicted in 2008 of violating Penal Code section 273a,

subdivision (a), for endangering the life of his three-year-old daughter.  Thus, in 2008, he clearly posed a risk of danger to his young child.  Father states that he is a different person now, but the court had before it no evidence showing that he has changed since that time, such that he no longer poses a risk of serious harm to his three-year-old son.  Accordingly, the disposition order must be affirmed.

DISPOSITION

The juvenile court's jurisdictional findings and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P.J.

KRIEGLER, J.

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10