Filed 4/1/15  In re T.J. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re T.J. et al., Persons Coming Under the Juvenile Court Law. | B255545 |
| | (Los Angeles County Super. Ct. No. DK00800) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>N.M. et al.,<br><br>    Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Carlos Vazquez, Judge.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant N.M.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Ronnie L.

Richard D. Weiss, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

N.M. (mother) and Ronnie L. (father) appeal from orders declaring N.M.'s daughter a dependent of the court, removing five younger children from father's custody, and directing N.M. to participate in sexual abuse awareness counseling, contending the orders are unsupported by substantial evidence. We affirm.

## FACTS AND PROCEEDINGS BELOW

The family in this case comprises mother, father, T.J., mother's 16-year-old daughter from a prior relationship, and mother's and father's five younger children. Although father was not T.J.'s natural parent, he had known her since she was eight months old and was her only father figure, beginning when she was eight years old.

On June 28, 2013, T.J. informed a maternal aunt that in December 2012 she was sleeping in her bedroom with only a T-shirt on and awoke to find father between her legs rubbing her vagina. She kicked him and told him to leave, which he did, telling her not to inform mother. On June 25, 2013, father came to her room again and asked her to remove her panties. She refused and told him to leave, which he did, again asking her not to tell mother. The maternal aunt informed mother, who evicted father from their home.

Three weeks later, mother permitted father to return to the home. She did not inform police, but installed cameras in the home and locked T.J.'s bedroom door at night, confining her there with her consent, when father was present.

In September 2013, a second maternal aunt learned of the abuse and called police and the Department of Children and Family Services (DCFS or the department).

When interviewed, T.J. reported the two instances of abuse and added that father, who had a medical marijuana license, often provided her with marijuana and alcohol. In subsequent interviews with social workers, T.J. elaborated that in the December 2012 incident, she woke to find father under her shirt between her legs, with his mouth on her vagina. In the June 2013 incident, father was "rubbing on" her and told her to take off her pants, but she refused and wrapped herself in blankets. T.J. said mother initially believed her but later doubted her claims.

When mother was interviewed, she stated she had not known of the abuse before her sister informed her in June 2013 and was skeptical that it actually occurred. She

2

reported she and T.J. were at odds over T.J.'s drug use and lifestyle, and T.J. was motivated by a desire to live with an aunt in Los Angeles.

Father consistently denied he had ever abused T.J. or provided drugs or alcohol to her. None of T.J.'s siblings reported knowing of the abuse or drugs or alcohol, and none showed any sign of abuse or neglect.

DCFS petitioned the juvenile court under Welfare and Institutions Code section 300, subdivisions (b), (d) and (j),[1] for orders declaring all the children dependents of the court. The petition as ultimately sustained alleged father sexually abused T.J., and mother knew of the abuse but failed to protect her, both of which endangered her physical health and safety. There was no finding this endangered T.J.'s siblings. (The allegation that it did was ultimately stricken by the juvenile court.) The petition also alleged father provided marijuana and alcohol to T.J., which endangered both her and her siblings. There was no finding mother knew or reasonably should have known about the marijuana or alcohol. (The allegation was stricken by the court.)

At the detention hearing, all of the children except T.J. were ordered released to mother on the condition that father not reside with them.

At a long, contested jurisdiction hearing, T.J. testified father molested her in December 2012 and asked her if he could do it again in June 2013, while rubbing her hip and buttocks. She stated she asked him several times to leave, which he eventually did. He also gave her marijuana multiple times and alcohol four times. When mother found out, she kicked father out of the house, but permitted him to return a few weeks later because she needed his help with the other children.

Mother testified T.J. would often lie, and she believed she was lying about these events because mother and daughter were having difficulties and T.J. wanted to live with an aunt in Los Angeles. Mother admitted she did not call the police when she was informed of the abuse, but she installed cameras in the home and put a lock on T.J.'s bedroom door.

---

[1] All statutory references are to the Welfare and Institutions Code.

3

The juvenile court found that T.J. was credible. She had a good, open relationship with father and no motive to make up what "even to a young person" would obviously be "every explosive and very damaging allegations." "She made some very difficult admissions on the witness stand about her drug use and about some things that did not necessarily present her in a—as a complete innocent." On the other hand, the court found the mother was not credible, as she was intent on protecting father and "went to great lengths to try to portray a situation where it would have been completely impossible for [father] to have committed the act that was involved in the sexual allegation . . . ."

The court amended and sustained the petition and declared all the children dependents. It found father's willingness to provide marijuana and alcohol to T.J. endangered her siblings because "if he was so willing to give—if he was willing to give drugs and alcohol to a minor under—in his own household, the court can really find no distinction in this case between the [siblings] and [T.J.] in terms of being at risk." The court also found mother failed to protect T.J. from father's sexual predation, stating that "on some level she must have had some suspicion or belief or at least believed [T.J.] to some extent—at least to the extent enough to kick out her male companion out of the home. [¶] But then what did she do? She doesn't call the police. She allowed him to come back installing cameras which she indicated which was just to make [T.J.] feel better . . . ."

The court ordered that T.J. be removed from the parents. It ordered that her siblings remain in mother's custody, with ongoing department supervision, but ordered that father not remain in the home, finding "by clear and convincing evidence that there is a substantial danger if the children were to be returned to [father's] care, that there are no reasonable means by which the children's physical and emotional health can be protected without removing the children from his care." The court further ordered mother, at her attorney's suggestion, to participate in sexual abuse awareness counseling and father to complete a parenting class and participate in sexual abuse counseling. The court ordered that father remain out of the home, but then granted him unlimited, unmonitored visitation rights.

4

Mother appeals from the jurisdictional finding that she failed to protect T.J. and the order that she participate in counseling.

Father appeals from the order removing T.J.'s siblings from his care.

## DISCUSSION

Mother contends the finding that she failed to protect T.J. and the order that she undergo counseling were unsupported by substantial evidence. Father contends the removal order as to T.J.'s siblings was unsupported by substantial evidence.

As a preliminary matter, the department argues we need not entertain either appeal because jurisdiction based on the action of one parent suffices to defeat the jurisdiction challenge of the other, and neither parent objected to the dispositional orders at the time of trial.

It is true that when jurisdiction is supported by substantial evidence on any ground, the appellate court need not consider the sufficiency of evidence supporting other bases for jurisdiction. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 330 ["Section 300 contemplates that jurisdiction may be based on any single subdivision"]; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; see *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876.) And because neither parent challenges jurisdiction as to T.J. based on father's actions, we need not review the jurisdiction finding based on mother's acts. We will nevertheless do so, as a court's finding that a parent has endangered her child may have far reaching consequences including but not limited to a potential impact on future dependency proceedings. (*In re D.P.* (2014) 225 Cal.App.4th 898, 902; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) We will also review the challenged disposition orders, as a contention that a judgment is unsupported by substantial evidence may be made for the first time on appeal. (*Tahoe Nat'l Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17.)

## A.    Standard of Review

At a jurisdictional hearing, a juvenile court must base its findings on a preponderance of evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1432.) A disposition order that removes a child from the physical custody of a parent, on the other

5

hand, must be founded on clear and convincing evidence both that a substantial danger exists "to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home," and that no reasonable means exist "by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).)

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citation.] The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.*, *supra*, 174 Cal.App.4th at p. 1433.) "In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

## B.    Mother's Appeal

Mother contends insufficient evidence supports the finding that she failed to protect T.J. because it is undisputed she took protective actions that were effective from June to September 2013 in preventing further sexual abuse. She removed father from the home for a time, then permitted him to return only after installing cameras and getting T.J. to agree to be confined to her room at night behind a locked door. She cannot be faulted for failing to call the police, mother argues, because T.J. hysterically asked her not to, and police involvement was unnecessary to T.J.'s protection—she handled the situation. Mother argues methods that actually work are evidence of proper protection.

Mother's evidence establishes she protected T.J. from actual harm from June to September 2013, as there was no further abuse. But she did not remove the *risk* of harm during that time. A child comes within the jurisdiction of the juvenile court under subdivision (b) of section 300 if he or she "has suffered, *or there is a substantial risk* that the child will suffer, serious physical harm or illness, as a result of the failure or inability

6

of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b), italics added.)

The juvenile court had before it evidence that father remained in the home after June 2013 and had access to T.J. there. A bedroom door locked at night would not completely separate two people who live in the same household and lead relatively normal lives. Mother informed no one in authority that father abused T.J., which arguably left him free to do so again. And she sought no counseling for T.J., admittedly tempering her response to the abuse according to her skepticism that it had actually occurred and her need to have father in the home to help with the other children.

Given these facts, the juvenile court had ample evidence from which to conclude mother failed to protect T.J. from "a substantial risk" of serious physical harm.

Mother contends the order that she undergo sexual abuse counseling is unfounded because T.J. no longer lives in the home—she has moved in with an aunt—and no finding was made that sexual abuse affected the remaining children.

Again, these are arguments to be made in the trial court, not on appeal. The trial court heard evidence that mother knowingly permitted a sexual predator to live in close proximity with her 16-year-old daughter, in part because it was necessary that he do so to help with the other children. The court could reasonably conclude from this fact alone that mother would benefit from sexual abuse awareness counseling.

## C. Father's Appeal

Father contends that the removal order as to T.J.'s siblings was unfounded, as evidenced by the juvenile court's inconsistent order that he be granted unlimited, unmonitored visitation.

We agree the orders are inconsistent, and the visitation order implies the court found father presented no danger to the children. But an implied finding cannot trump an express contrary finding. The trial court expressly found no meaningful distinction between T.J. and her siblings when it came to father's willingness to distribute drugs to minors. Father's providing marijuana and alcohol to a minor indicated he had the means

7

and willingness to do so and saw nothing wrong with doing so. The court found this endangered T.J.'s siblings.

Although the court's order that father enjoy unlimited, unmonitored visitation was somewhat inconsistent with its finding that he would pose a danger to them if allowed to live in the home, it did not completely contradict the finding. The court reasonably could have concluded father's diminished status as a visitor rather than custodian (at least for the time being) would convince him of the impropriety of giving drugs to minor children and persuade him to discontinue the practice. We therefore conclude the order was supported by substantial evidence and did not constitute an abuse of discretion.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED.


                                        CHANEY, Acting P. J.


We concur:



JOHNSON, J.



BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.