Filed 4/26/16  In re Alexandra U. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ALEXANDRA U., a Person Coming Under the Juvenile Court Law. | B267264<br>(Los Angeles County<br>Super. Ct. No. DK11283) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>PEDRO U.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor H. Greenberg, Judge.  Affirmed.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Pedro U. challenges some—but not all—of the jurisdictional findings made by the juvenile court in this dependency case. (Welf. & Inst. Code, § 300.)[1] Piecemeal review of the sustained findings is unnecessary: jurisdiction must be upheld because appellant is an offending parent under each of the five counts. The court's disposition order, based on all of the evidence, was well within its discretion. We affirm.

## FACTS

Seven-year-old Alexandra U. was detained from her father, Pedro U. (Father) in May 2015, after she reported that he caressed her vagina over her pajamas, while they shared a bed. She has overnight weekend visits with Father, but otherwise lives with her mother, Mayra B. (Mother). The parents separated in 2011 due to Father's domestic violence against Mother while he was intoxicated. The Department of Children and Family Services (DCFS) filed a petition on behalf of Alexandra.

When interviewed by a DCFS social worker, Alexandra recalled that before her parents separated, "[t]hey fought all the time." Mostly, the fights consisted of "yelling at each other." On one occasion, she heard "my mom crying and stuff falling." She entered the living room, saw the parents pushing each other, and Father "kicked my mom on her legs." The altercation ended when the parents realized that Alexandra was watching them. After that incident, Alexandra and Mother went to live with a relative and the parents' relationship ended.

Mother stated that Father became verbally abusive when she was pregnant with Alexandra. After the child was born, Father began drinking more and more, and the parents yelled at each other in Alexandra's presence. While intoxicated, Father assaulted Mother, pressing her neck to prevent her from breathing and threatening to knock out her teeth. On another occasion, Father put his foot on Mother's throat, so that she could not move or breathe. Mother fled Father for good after a police officer warned her that if she stayed with Father and the fighting continued, she would lose custody of Alexandra.

---

[1] Statutory references in this opinion are to the Welfare and Institutions Code.

During her last visit with Father, Alexandra fell asleep in the bed she shares with him. Late at night, she awoke "because I felt someone touching me down there (vagina)." Frightened, she turned and saw Father. Once she looked at him, Father stopped rubbing her vaginal area. She was "scared." Upon returning to Mother's home the next day, Alexandra "was crying and crying" and disclosed Father's behavior to Mother. This was the only time Father molested Alexandra. Mother relayed Alexandra's report to a school counselor and to a pediatrician, who called child protective services.

Father accused Mother of coaching Alexandra and denied touching the child inappropriately. Father identified Mother as the instigator of domestic violence and denied ever hitting or yelling at Mother. If Alexandra truly thinks that he molested her, then "she needs to be evaluated mentally because I am innocent." He opined that Alexandra was crying when he dropped her off because "she loves me very much and doesn't want to leave my home." However, Alexandra's godmother was present when Father arrived with Alexandra. The child was crying but refused to say why she was upset until after Father departed. Mother and the godmother were shocked when Alexandra disclosed that Father touched her.

Alexandra had a forensic interview with a psychologist and consistently related what occurred when Father touched her. She told the evaluator that she was not sure if she feels safe with Father. She hopes that he will "promise not to touch me anymore."

At the jurisdiction hearing, Alexandra testified that she and Father share a small bed at his house during overnight visits. Father sleeps a lot, and forgets that Alexandra is playing at a neighbor's house; when he fails to retrieve her, she spends the night with the neighbor. Father never hits or yells at her and she enjoys staying with him. She is not scared of Father and misses him.

Alexandra was asleep when Father began touching her for "a little bit." She looked at him and he "put his hands away," adding "I didn't like it." She twice stated that Father drinks "a lot of beer." Sometimes he consumes a few beers before driving her, but he drives well and she is not afraid. She recalls that Father and Mother argued four years earlier, but now the parents do not talk or fight.

3

Father testified that Alexandra visited him every other weekend for the last four years, since the parents separated. He shares his bed with Alexandra during visits but denies touching her inappropriately; he does not know why she accuses him of it. Father drinks beer on the weekend, but denies getting "really way out" drunk. He stops drinking by 1:00 p.m. to drive Alexandra to Mother's house. He has not argued with or had altercations with Mother since they split four years ago.

The juvenile court sustained five counts against Father of conduct that endangered Alexandra, places her at risk of serious harm, constituted sexual abuse, and was a failure to protect the child: (1) the parents have a history of domestic violence and Father engaged in violent acts against Mother in the child's presence; (2) Father sexually abused Alexandra by fondling her vagina with his hands; (3) Father pushed and kicked Mother in Alexandra's presence; (4) Father has a history of alcohol use and is a current abuser of alcohol, which renders him incapable of providing the child with regular care and supervision: after drinking, he falls asleep and forgets to pick her up; and (5) Father's sexual abuse creates a detrimental home environment and poses a risk of harm.

The court noted that Father drank up to three 24-ounce beers at a sitting, then "sleeps a lot." Though the domestic violence events were not recent, Father engaged in violence on "many multiple occasions and that type of violence places the minor at risk." The problems were never remediated.

Moving to disposition, the court left Alexandra in Mother's physical custody under DCFS supervision. Though non-offending, Mother receives family maintenance services, and is to participate in sexual abuse/awareness counseling, and individual counseling to address domestic violence and other case issues. Father's attorney said to the court, "I'm asking if you can do the alcohol/drug testing at 12-step A.A. meetings, not a full program," inspiring the court to observe that Father's counsel "and I seem to have the same thought." Counsel replied, "Thank you." The court then struck the requirement that Father enroll in a drug or alcohol program with testing and instead ordered that he engage in a 12-step program with court card and sponsor; a parenting program; sexual abuse counseling for perpetrators; and individual counseling to address domestic violence

4

and anger management issues. Father had monitored visits, and DCFS had discretion to liberalize visits. At the end of the disposition orders, Father's counsel once again said "Thank you, your Honor," and did not object.

## DISCUSSION

### 1. Dependency Jurisdiction

Father does not challenge the sustained sexual abuse counts against him. Instead, he questions the sufficiency of the evidence supporting the counts that Alexandra is at risk of suffering serious physical harm from his domestic violence and alcohol abuse. Father concedes that dependency jurisdiction is proper. He wants us to reject some of the court's findings while accepting the validity of other sustained counts.

Jurisdictional findings are not reviewed piecemeal. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor *if any one of the statutory bases* for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773, italics added; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) This Court has held that "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979. See also *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72.)

Father relies on *In re Drake M.* (2012) 211 Cal.App.4th 754 in urging us to reach the merits of his appeal. *Drake M.* is inapposite. In *Drake M.*, the court addressed the merits because "the outcome of this appeal is the difference between father's being an 'offending' parent versus a 'non-offending' parent. Such a distinction may have far reaching implications with respect to future dependency proceedings in this case and father's parental rights." (*Id.* at p. 763.) Here, by contrast, Father is an offending parent under the uncontested sexual abuse counts, even if we do not examine the sufficiency of the evidence regarding the domestic violence and alcohol abuse counts. This Court has

held that *Drake M.* "does not apply where, as here, several jurisdictional findings have been sustained involving different conduct of the parent." (*In re Brianna V.* (2015) 236 Cal.App.4th 297, 310.)

The purpose of the dependency proceeding is "to protect the child, rather than prosecute the parent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Unlike a criminal prosecution, no prison sentence is meted out for each count in the dependency petition. If even one count of parental abuse or neglect is properly sustained, the courts must assert dependency jurisdiction. Given the gravity of the uncontested sexual abuse counts, the court had to exert jurisdiction to protect the Alexandra.

## 2. **Disposition Orders**

After finding that a child comes within its jurisdiction, the juvenile court has broad discretion to make an appropriate disposition order to protect the child's interests, which "is not limited to the content of the sustained petition." (*In re Brianna V.*, *supra*, 236 Cal.App.4th at p. 311; *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; § 358.) The order must be designed to eliminate conditions that led to the sustained petition. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.) The court perceived a substantial danger if Alexandra is returned to Father's care and no reasonable means to protect her physical and emotional health and well-being without removal from his physical custody. It could then order parental participation in child welfare services, which "may include a direction to participate in a counseling or education program." (§ 362, subds. (c), (d).)

The court specified services for Father of an A.A. 12-step program, parenting classes and counseling. Father did not object to the A.A. program: in fact, his attorney suggested it and thanked the court for imposing it. Father's newly minted objection to the A.A. program was not preserved for review. (*In re Anthony P.* (1995) 39 Cal.App.4th 635, 641; *In re Richard K.* (1994) 25 Cal.App.4th 580, 590 [a parent who consents to an order is not wronged by it and cannot object to it for the first time on appeal].)

Alexandra testified that Father drinks "a lot of beer" when she is staying at his house, even before driving her in his car. Mother noticed that Father's breath smelled of alcohol when he dropped Alexandra off after visits: when she asked him not to drink in

the child's presence, he replied that he "could drink and drive if he chose to." Mother stated that Father's violence was triggered by alcohol abuse and intoxication. Alexandra was deeply affected, referring during interviews to seeing Father hit Mother. Though the child was only three years old during the violent acts, she remembered them four years later. The evidence plainly showed that Father is still drinking considerable amounts of alcohol, which poses a continuing risk to Alexandra's physical and emotional health and safety when she visits Father.

It is not unreasonable to infer that Father's molestation of Alexandra occurred while he was intoxicated, and that he forgets to pick up Alexandra from the neighbors' home because he is in an alcoholic stupor. A service plan formulated to correct parental deficiencies and create a suitable home—including alcohol abuse and anger management or violence issues—is not an abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1005, 1008.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.


7